STATE OF CONNECTICUT *v.* RENE RODRIGUE ET AL.

SUPERIOR COURT     WINDHAM COUNTY     FILE No. 10218

Memorandum filed March 23, 1954.

*William L. Beers,* attorney general, and *Ernest H. Halstedt,* assistant attorney general, of Hartford, for the plaintiff.

*Jacob Berman,* of Hartford, for the defendants.

KING, J. This is a civil action brought by the state of Connecticut for the recovery of funds advanced under the law as to aid to dependent children (General Statutes, c. 131).

The defendants, husband and wife, are the parents of four children, the eldest of whom is an honor student in high school not yet quite seventeen. The youngest child is not yet five. All four are in good health and doing well in school.

The defendant husband (hereinafter referred to as the defendant) was in 1948, and still is, a distributor of Watkins products, which he purchases at wholesale and then sells from house to house. His territory is Willimantic and vicinity. In 1948 he was making a profit of about $100 a week. He feels that if he could now work a full eight-hour day he could do as well.

In July, 1948, he was injured in a collision between another car and the car in which he was riding as a passenger. The collision occurred near Sherbrooke, Quebec, and the venue of the defendant's

suit against the two operators was New York. Due to congestion of the docket and other unavoidable delays the case was not disposed of until the late spring of 1953, when the plaintiff received in settlement a net sum (after deduction of legal fees, medical and hospital bills and court costs, all paid directly to the creditors from the settlement proceeds) of about $21,830.

He sustained serious personal injuries and had, and still has, a condition of angina pectoris not causally connected with the accident. Dr. Maurer testified that attacks of angina are precipitated by physical exertion and emotional disturbance and that the immediate treatment is rest. The defendant's Watkins earnings practically ceased at the time of the accident (although he managed to retain the distributorship) and thereafter he borrowed extensively from friends and relatives to meet expenses. He later received aid from the town of Coventry amounting, in the aggregate, to over $1500. About April of 1951 he applied for state aid to dependent children, and from June 1, 1951, through June 30, 1953, received a total amount of $6045.68 as such aid. This was at a rate which varied slightly but averaged a little under $250 a month.

The state was fully aware of the lawsuit and its impending disposition and had actual knowledge of the receipt of the settlement money within a few days. The entire settlement proceeds were deposited on July 2, 1953, in a checking account (exhibit A) in a Willimantic bank in the joint names of the defendant husband and wife.

As more particularly shown by exhibit A, the defendant immediately began issuing checks to various persons, most of whom he claimed that he owed. He also repaid the town of Coventry. By October 14, 1953, the balance had been reduced to $2826.65,

at which time it was garnished by the state in this action. Also attached at the same time were some goods for sale found in the defendant's delivery truck which may have been worth $300 or $400.

Since June of 1953 he has received no state aid and has worked as much as he felt he could at building up his Watkins business, which he never wholly abandoned.

The state proved that the defendant's average net income from his business over and above expenses is now about $150 a month. The state's own estimate of the amount needed to maintain a standard of health and decency in the family may fairly be measured by the aid granted (Cum. Sup. 1953 § 1224c [a]) of about $250 a month. It thus appears that the defendant's earnings fall short, by about $100 a month, of the amount necessary to maintain such a standard. It did not appear that the defendant wife has any substantial independent earning power, at least until the youngest child gets older.

The state also proved that in capital assets the defendant has (1) the amount garnished in the bank of $2826.65; (2) a credit applicable to merchandise to be purchased from the Watkins Company of about $185; (3) cash in hand of about $235; (4) products on hand for sale worth about $500; (5) products on hand for sale under attachment worth at least $300. This makes a total amount of $4046.65.

It did not appear that the defendant wife has any capital assets except her joint interest in the bank deposit now under foreign attachment.

In an action such as this, brought under the provisions of § 1231c of the 1953 Cumulative Supplement for the recovery from the parents of funds advanced by the state under the law as to aid to dependent children (§ 1224c [a]), the state has the

burden of proving (1) that after the granting of such aid the parents have "sufficient means to support" the home "on a reasonable standard of health and decency" and (2) that in addition thereto the parents have "other available funds or resources."

This was recognized by the state and both conditions were in effect alleged to exist in paragraph 6 of the amended complaint. All other paragraphs of the complaint were admitted. Consequently the trial involved a controversy as to whether, and if so to what extent, the state had sustained its burden of proof as to these two essential elements of its case.

It is obvious that mere earning power alone is not the exclusive test of "sufficient means" properly to support the family. Thus an A.D.C. recipient who was wholly incapacitated from working at all, and who thus had neither earnings nor earning power, if bequeathed a sufficiently large sum of money, would have means sufficient to support his family in luxury for the rest of his life and obviously would have, from any excess, "other available funds or resources" with which to reimburse the state for aid received. Merely because the state failed in the instant case (by $100 a month) to prove that the defendant's net profits from his business were sufficient to support his family in a reasonable standard of health and decency, does not necessarily preclude any right of reimbursement at all.

The vital problem is for how long in the future is a capital reserve to be invaded in making up a current support deficiency before a point is reached where it can fairly be said that there remain "available funds or resources" for reimbursement.

This is not a question susceptible of precise determination by any thumb-rule or yardstick. It is like the amount to be awarded for damages for a personal injury resulting in a permanent impair-

ment or destruction of earning capacity. A just and reasonable figure must be sought, having in mind on the one hand the standard of support required for the family and the reasonable probability of future income, whether greater or less than at present realized, and on the other hand the obvious purpose of the statute to reimburse the state when excess "available funds or resources" are present.

Some reasonable working capital is needed in this business, and because of the physical condition of this defendant in view of his angina, no other employment was shown to hold out brighter prospects. And he is considerably assisted by his wife and children in his sales. The state more or less agreed to this need of working capital, and that it existed to the extent of the products on hand and under attachment, the credit applicable from the Watkins Company and the cash in hand. This would amount to $1220 on the foregoing figures and leave as the only other resource the deposit garnished. Under the very peculiar circumstances of this case (which would be unlikely to exist except in the case of an entrepreneur as distinguished from a wage earner) that is a fair, and legally sound, position for the state to take.

The state then seems to claim that at most one month's current support deficiency ($100) should be taken from the bank deposit and the entire balance treated as "available funds or resources" to be applied to the state's claim. The court is unable to accept any such position on the evidence, which discloses no reasonable probability of an increase in net profits of $100 in the next month's business or in the immediate future. Some improvement in net profits is anticipated by this defendant. To forecast to what extent, and when, it will come is a problem of no little difficulty. However, absolute accuracy in such a forecast is not required, since the $100 de-

ficiency need be made up by invasion of capital for only a reasonable time in the future, dependent upon all the circumstances. Even in the case of a wage earner in good health with a steady employment, there is an element of uncertainty in future earnings. In the purchase of a used Cadillac car for $2000, the defendant manifested some extravagance. This to some extent militates against too great a reservation of capital in his hands for future invasion to meet deficiencies in current support.

Under all the circumstances the court finds that the state has shown that not more than $1500 should be withheld from the amount garnished in meeting future income deficiencies under the statute.

Subtracting this sum from the amount garnished, leaves a balance of $1326.65 which the court finds constitutes "other available funds or resources," within the meaning of § 1231c, for the payment, pro tanto, of the amount admittedly advanced by the state.

Judgment may therefore enter in favor of the plaintiff in the amount of $1326.65.