IN THE MATTER OF THE APPLICATION OF ELTON A. CONDA, SURROGATE OF BURLINGTON COUNTY.

Submitted December 19, 1984—Resubmitted June 6, 1986. Decided October 30, 1986.

*Linda J. Cushing,* Counsel, submitted briefs on behalf of petitioner, Elton A. Conda, etc.

*Dorothy Donnelly,* Deputy Attorney General, submitted a brief on behalf of the respondent, State of New Jersey (*Irwin I. Kimmelman,* former Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

PER CURIAM.

In this petition for review the Surrogate of Burlington County challenges Rule 4:48A(a), which pertains to the disposition of the proceeds of judgments for infants, and a Notice to the Bar dealing with the same subject, which was issued by Edward B. McConnell, former Administrative Director of the Courts, on August 4, 1970, and published on August 13, 1970, at 93 *N.J.L.J.* 537 (1970). The petition is opposed by the Attorney General. Because of the sparsity of the record and the essentially legal nature of the issues, we deem oral argument unnecessary, and proceed to dispose of the matter on the petition and briefs. The petition is dismissed for reasons that follow, but certain matters raised therein are referred to the Chief Justice and Administrative Director since the relief sought by petitioner is really a request for rule amendments and changes in administrative directives, to remedy certain perceived problems in the handling of minors' funds, and should be addressed through the normal rule-making ·and administrative processes. These processes are uniquely suited to assessing the extent and nature of the problems raised by petitioner and formulating any proposals for needed rule amendments, administrative directives, and legislation.

## I.

The Rule challenged by petitioner, which was adopted by the Court on July 7, 1971, and became effective September 13, 1971, now provides:

a) Infant. In the event of a judgment for an infant after trial or settlement, the court shall dispense with the giving of a bond, and, except as otherwise ordered by the court, shall direct the proceeds of the judgment, if it does not exceed $5,000 to be disposed of pursuant to *N.J.S.A.* 3B:12–6, and if it exceeds the same, then to be deposited in court pursuant to *N.J.S.A.* 3B:15–16 and 17. A copy of the order directing deposit of the proceeds shall be furnished by the court to the surrogate.

[*R.* 4:48A(a).]

The August 1970 Notice to the Bar, which was issued prior to the adoption of Rule 4:48A, stated:

In the interest of preserving to an infant the principal of funds paid into court and deposited in interest-bearing accounts, pursuant to *N.J.S.* 3A:7–14.1 [now *N.J.S.A.* 3B:15–16], the court will, at the time of the entry of judgment, advise the infant and his parents that the money so deposited may be paid out of the court *only for good cause* until such time as the infant becomes 21 years of age; that they will not be required to retain an attorney to apply for release of the funds; and that there shall be available in the Surrogate's office of each county copies of the form of petition and order to be completed by the guardian and filed with the Surrogate when seeking withdrawal of the funds so deposited.

The Surrogate, upon the filing of the petition and order, will send them to the judge assigned to handle probate matters for appropriate action.

[93 *N.J.L.J.* 537 (1970) (emphasis and bracketed material supplied).]

Petitioner reads Rule 4:48A(a) as requiring the court to dispense with the giving of a bond and dispose of the proceeds of a judgment for a minor in accordance with *N.J.S.A.* 3B:12–6, if the amount is $5,000 or less, or *N.J.S.A.* 3B:15–16 if the amount exceeds $5,000. Based on this reading of Rule 4:48A(a), petitioner contends that the Court exceeded its rule-making power by requiring the deposit of judgments over $5,000 into court without bond and ignoring the statutory options set forth in *N.J.S.A.* 3B:15–1 (guardian retaining custody of minor's estate required to furnish bond) and *N.J.S.A.* 3B:15–11 and –12 (guardian depositing cash in bank required to furnish such bond as court deems sufficient under the circumstances). According to petitioner the Rule adopted by the

Court in 1971 infringes on the legislative power and thus violates the separation of powers established in the State Constitution. He calls upon the Court to amend the Rule and require notice to guardians that they have the three statutory options for the safekeeping of their wards' funds. The Attorney General, on the other hand, argues that petitioner has misconstrued Rule 4:48A(a), because the words "except as otherwise ordered by the court" permit the court to use any of the three statutory options, and that consequently there is no conflict between the Rule and the statutes.

We agree with the Attorney General. Rule 4:48A did not come into being until 1971. Prior to 1969 the Rules did not touch upon the statutory options for disposing of the proceeds of judgments in favor of minors. *See R.* 4:56A, which governed "friendly" proceedings involving judgments for minors and incompetents. In 1968, at the request of the Supreme Court, the Committee on County District Courts studied the bonding procedures with respect to friendly suits and recommended that the hardships imposed on guardians by the requirement of surety bonds then contained in *N.J.S.A.* 3A:7-1 and 3A:7-10, the antecedents for *N.J.S.A.* 3B:15-1 and 3B:15-11 respectively, be mitigated by encouraging surrogates to use *N.J.S.A.* 3A:7-14.1, the source of today's *N.J.S.A.* 3B:15-16, which permitted the court to dispense with the bond requirement where the judgment proceeds did not exceed $10,000 and were deposited into court. 91 *N.J.L.J.* 177 (1968). Rule 4:44-3, adopted as part of the 1969 revision, accepted that recommendation and provided, in pertinent part, that if a court approved of a settlement of $10,000 or less for a minor or incompetent, it should enter an order "directing, in lieu of a guardian's bond, disposition of the proceeds thereof pursuant to *N.J.S.* 3A:7-14.-1." Judge Pressler, in her comment to the current version of Rule 4:44-3 refers to the Committee's 1968 recommendations and notes that

[w]hile the statute is permissive in its terms [referring to *N.J.S.* 3A:7-14.1] it was the evident intent of the rule that the deposit in lieu of surety bond

provided for by the statute should be made mandatory in such cases in order to preserve the principal of the infant's or incompetent's funds without the incurring of the annual bond premium expense.

[*Pressler, Current N.J. Court Rules,* Comment *R.* 4:44–3 (1986) (bracketed material supplied).]

Petitioner cites the above-quoted portion of Judge Pressler's comment as support for his argument that the present Rule 4:48A mandates dispensing with the giving of bond and use of *N.J.S.A.* 3B:15–16. That portion of the comment, however, is obviously directed to the version of Rule 4:44–3 adopted in 1969, which was mandatory, not to Rule 4:48A. The remainder of Judge Pressler's comment is illuminating in this regard:

The rule, however, did not entirely serve its purpose. First, *N.J.S.* 3A:7–14.1 was amended in 1969 [*L.* 1969, *c.* 185] to eliminate the $10,000 ceiling. Second, despite the mandatory provision of the rule it was apparently not uniformly followed in all counties. Third, there was substantial question as to whether or not the court, in particular circumstances, should not have the authority to provide for some alternate disposition of the funds, such as the appointment of an institutional trustee. Most significantly, the rule applied only to friendly judgments and not to judgments entered in an infant's or incompetent's favor after trial. This gap was not filled by the statute, which, first, is, as noted, only permissive and not directory, and second, applies only to minors and not incompetents. These problems were met by the 1971 adoption of a new rule, *R.* 4:48A, to which this rule now merely refers rather than incorporating the provisions governing disposition. *R.* 4:48A applies to all judgments in favor of both infants and incompetents, requires disposition of the proceeds in accordance with *N.J.S.* 3B:15–16 and 17 unless the court otherwise orders and unless the judgment is in favor of an infant in an amount not exceeding $5,000.00. In the latter case the rule requires disposition of the fund in accordance with *N.J.S.* 3B:12–6.

While a very literal reading of Rule 4:48A(a) might support petitioner's contention that the phrase "except as otherwise ordered by the court" modifies the matter following rather than preceding it, the foregoing history of the Rule and a closer examination of its meaning dictate otherwise. Where the amount exceeds $5,000 and the court uses its authority under the "except as otherwise ordered" phrase, the only alternative dispositions are those provided in *N.J.S.A.* 3B:15–1 and 3B:15–11, both of which require the giving of a bond. It would be illogical to mandate dispensing with the bond requirement in all cases and then allow alternatives that require a bond. That

was not the Court's intent when it adopted the Rule. Clearly Rule 4:48A authorizes judges to dispose of minors' funds pursuant to any of the three statutory alternatives and there is thus no conflict with the scheme established by the Legislature. Petitioner's challenge to the rule therefore must fail.

## II.

Petitioner attacks the 1970 Notice to the Bar on the ground that in stating that minors' funds deposited in court will be paid out "only for good cause," it provides inadequate standards and thus has led to inappropriate court-approved withdrawals for purposes other than those intended by the Legislature. In his brief the Surrogate recites several examples (payment of household expenses including dog food, purchase of a house, purchase of land, loan to a guardian, expense for video-game repair, rental and purchase of cars) of withdrawals from court-held funds that he regards as contrary to legislative intent and inconsistent with occasional denials of similar requests.[1] The examples illustrate, in petitioner's words, "the depletions of the minor's funds for necessities and non-necessities of the child and his parents and siblings." He argued initially that withdrawals from minors' funds held by the court should be limited to medical expenses relating to the injury suffered that generated the personal injury award, catastrophic medical expenses, and expenses related to special therapy or education. In the face of the Attorney General's arguments that statutory and case law do not so limit the use of minors' funds, petitioner seemed to retreat to a request that the Court "set adequate guidelines to protect the minors from the abuses that presently exist."

The standards provided by the Legislature and precedent for the use of minors' funds are broader and more permissive than

---

[1]To protect the privacy of the minors, petitioner's examples do not give their names and the record does not include copies of the withdrawal petitions or orders.

the guidelines sought by petitioner. The examples of assertedly improvident withdrawals recited by him may or may not be appropriate uses of minors' funds, depending on the circumstances of each case, but we do not pass on them since the petitions and orders are not properly before us. We note, however, that while it has long been held that the estate of a minor should not be charged for the support and maintenance of a minor where others are responsible and able to do so, *Rednor v. First Mechanics Nat'l Bank*, 131 *N.J.Eq.* 141, 154 (E. & A. 1942); *Smith v. Robinson*, 83 *N.J.Eq.* 384, 387 (Ch. 1914); *Walling's Case*, 35 *N.J.Eq.* 105, 106–07 (Prerog.1882); *Stephens v. Howard's Ex'r*, 32 *N.J.Eq.* 244 (Ch.1880), it has also been said that a minor's funds may be so used where those responsible for his support cannot provide it. *Francis, et al. v. Harris*, 100 *N.J.Super.* 313, 324–25 (Law Div.), aff'd o.b., 103 *N.J.Super.* 440 (App.Div.1968), certif. den., 53 *N.J.* 227 (1969); *Tompkins v. Tompkins' Executors*, 18 *N.J.Eq.* 303, 304 (Ch. 1867); *Morris v. Morris*, 15 *N.J.Eq.* 239, 242 (Prerog.1857). Indeed it has been said in chancery that a minor's estate may be used to maintain the standard of living to which the child is accustomed, *Caruso v. Caruso*, 102 *N.J.Eq.* 393, 403 (Ch.1928); *Tompkins, supra*, 18 *N.J.Eq.* 303, and the use of minors' funds for living expenses that also benefited other members of the household was approved in *In re Estate of Arbuckle*, 70 *N.J. Super.* 170, 174 (App.Div.1961).

These principles have been, for the most part, codified by the Legislature in our statutory law. Thus *N.J.S.A.* 3B:12–43 permits the guardian of a minor's estate to use the estate

> for the support, maintenance, education, general use and benefit of the ward ... in the manner, at the time or times and to the extent that the guardian, in an exercise of a reasonable discretion, deems suitable and proper, with or without court order, with due regard to the duty and ability of any person to support or provide for the ward if the ward is a minor ... and with or without regard to any other funds, income or property which may be available for that purpose.

The guardian of a minor's estate is adjured to "consider recommendations relating to the appropriate standard of support,

education and benefit for the ward made by a parent or guardian of the person ...," *N.J.S.A.* 3B:12–44, and to make expenditures from the estate with "due regard" to the size thereof, the probable duration of the guardianship and "[t]he accustomed standard of living of the ward and members of his household." *N.J.S.A.* 3B:12–45. Further, the Legislature in *L.* 1979, *c.* 482, § 13, and *L.*1981, *c.* 405, explicitly authorized the guardian of a minor's or incompetent's estate to "expend funds of the ward's estate under *N.J.S.* 3B:12–43 for the support of persons legally dependent on the ward and others who are members of the ward's household who are unable to support themselves, and who are in need of support." *N.J.S.A.* 3B:12–46. For a general discussion of the Legislature's express enlargement of the powers and duties of guardians in 1979, see 7 *N.J. Practice* (*Clapp & Black, Wills and Administration*) (revised 3d ed. 1984), § 1070 at 252–53. The powers of the court over a minor's estate are no less complete. The Legislature has provided:

> The court has, for the benefit of the ward, his dependents and members of his household, all the powers over his estate and affairs which he could exercise, if present and not under a disability, except the power to make a will, and may confer those powers upon a guardian of his estate....
>
> [*N.J.S.A.* 3B:12–49.]

Finally, as to the purchase of houses and land, there can be no doubt that the guardians of minors' estates, as fiduciaries under title 3B (see definition in *N.J.S.A.* 3B:1–1) have the power to purchase and mortgage real estate. *N.J.S.A.* 3B:14–23.

█ The purpose of this recital is not to express approval of the expenditures criticized by petitioner in his brief, but rather to demonstrate that the Legislature has set forth a comprehensive set of standards that are rather more broad than those petitioner would have us adopt by Rule. Certainly a court would not err in refusing to authorize expenditures for household expenses from those portions of a minor's judgment proceeds that were intended for medical expenses. *In re Estate of Jackson*, 79 *N.J.* 517, 527 (1979); *Cumberland County Welfare Bd. v. Rodriguez*, 144 *N.J.Super.* 365, 383 (Law Div.1976).

That is not to say, however, that moneys awarded for pain and suffering cannot be used for that or other purposes in appropriate circumstances. *Francis, et al. v. Harris, supra,* 100 *N.J. Super.* at 325.

█ Because of the breadth of authority that the Legislature has conferred on guardians and courts with respect to the use of minors' funds, we deem the use of the phrase, in the 1970 Notice to the Bar, "for good cause" an appropriate reference to the standards governing such matters. It is for the judge to apply the law, as articulated in the statutes and precedent, to the circumstances of the particular case. At this time, of course, the references to the age 21 and *N.J.S.A.* 3A:7–14.1 are outdated and should be changed.

### III.

Petitioner argues that as a result of the operation of Rule 4:48A and the August 1970 Notice to the Bar, surrogates have been burdened with bookkeeping and accounting functions not contemplated by statute or the State Constitution. The Attorney General responds that the administrative burden placed on the surrogates is within the rule-making power of this Court.

█ The bookkeeping and accounting burdens of which petitioner complains are imposed upon him and the other surrogates of this State by Rule 4:48A(a), which requires that copies of orders directing deposits into court be furnished to the surrogate, and Rule 4:57–2(b), which requires that such funds be deposited in an interest-bearing federally insured trust account. The latter Rule provides further:

> These funds shall be intermingled pursuant to guidelines promulgated by the Administrative Office of the Courts with the approval of the Chief Justice. The clerk or surrogate shall maintain a record of the amounts deposited in each matter and may keep in a checking account a working reserve in an amount not exceeding that fixed by the Assignment Judge. Payment out of money deposited with the court shall be made only on order of the court.
>
> [*R.*4:57–2(b).]

The question presented by petitioner, which we answer in the affirmative, is whether this Court acted within its authority in adopting these Rules.

The county surrogate is elected by the people of his county, *N.J. Const. of 1947*, Art. VII, § II, para. 2, and is both judge and clerk of the surrogate's court of the county. *N.J.S.A.* 2A:5-1. The surrogate is thus a judicial officer, subject to the administrative oversight of the Chief Justice and the Supreme Court, as are all courts of this State. *In re Conda*, 72 *N.J.* 229, 234 (1977); *N.J. Const. of 1947*, Art. VI, § 11, para. 3, and § VII, para. 1.

Petitioner suggests that his duties are defined by *N.J.S.A.* 2A:5-17 to 2A:5-25 (transmission of documents and reports to Clerk of the Superior Court; recording, filing and maintenance of certain instruments), *N.J.S.A.* 3B:3-17 (admitting wills to probate and issuing letters thereon) and *N.J.S.A.* 3B:12-12 (appointment of guardians for minors), but do not include the bookkeeping and administrative functions related to maintaining court held funds for minors. We do not perceive that the duties of the surrogate are so limited. The 1978 amendment to the Constitution, which abolished the County Courts, also provides specifically that

all surrogates shall become clerks of the Chancery Division (Probate Part) of the Superior Court for their respective counties and shall perform such duties and maintain such files and records on behalf of the Clerk of the Superior Court as may be required by law and rule of court....

[*N.J. Const. of 1947*, Art. XI, § VI.]

As previously explained, the burdens of which petitioner complains are imposed by the interaction of Rule 4:48A and Rule 4:57-2(b). The authority to impose that burden is both implicitly and explicitly conferred upon this Court by the Constitution. Moreover, it has not escaped our attention that the Legislature contemplated the surrogates' involvement in the dispensing to guardians of funds held by the court pursuant to *N.J.S.A.* 3A:7-14.1, now *N.J.S.A.* 3B:15-16, when it provided that the fees for services of the surrogate include:

Proceedings in connection with payment into court of proceeds of a judgment in favor of a minor, in lieu of bond, pursuant to P.L.1959, c. 132 (in addition to fees payable under Letters of Guardianship), the following fee is payable upon withdrawal of funds on deposit: Ten dollars for each withdrawal including petitions and orders provided and prepared by the surrogate for withdrawal of funds for court approval.

[*N.J.S.A.* 22A:2–30.]

One of the problems ancillary to the administrative burdens complained of by petitioner involves the administration of funds by the surrogate in a structured settlement well beyond the age of majority. While we do not pass upon the legal validity of such an arrangement, we note that the Appellate Division recently approved the concept of purchasing an annuity with court-held funds that would continue payments beyond the age of majority in *Matter of Guardianship of A.D.L.*, 208 *N.J.Super.* 618 (1986). The practical difficulties of involving surrogates in the administration of structured settlements merit further study by an appropriate committee, as do other aspects of his petition.

## IV.

While the petition is dismissed, we indicated at the beginning of this opinion that certain matters raised therein would be referred to the Chief Justice and Administrative Director for evaluation. Specifically, we ask the Chief Justice to devise appropriate procedures sufficient to determine the following: whether Superior Court Judges are improperly allowing withdrawal of minors' funds; the extent, if any, of overburden on surrogates resulting from handling the deposits mentioned in this opinion, including structured settlement deposits; the continued desirability of the present practice of requiring deposits in court when recovery exceeds $5,000 (as compared to a more frequent use of other options). Information concerning these matters shall be submitted to the Court in the form of a report containing detailed factual information as well as appropriate recommendations. We shall then publish the report and consid-

er the matter thereafter in accordance with our regular rule-adoption proceedings.

For the reasons set forth herein, the petition is dismissed.

*For dismissal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.