MAGALI RAMOS, AN INFANT BY HER GUARDIAN AD LITEM, CEBERO RAMOS AND CEBERO RAMOS, INDIVIDUALLY v. JOSE RAMOS AND EDELRA RAMOS, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

Decided May 29, 1987.

*Thomas E. Hood* for plaintiff (*Hood & Abrams*, attorneys).

*Paul Spina*, for defendant (*McDermott, McGee & Ruprecht*, attorneys).

WECKER, J.S.C.

This is an application for approval of the settlement of an infant's claim and the investment of the infant's net recovery in something other than the surrogate's co-mingled investment funds. For the reasons set forth on the record on April 29, 1987, the settlement in the gross amount of $20,000 is tentatively[1] approved, along with the payment of $1,000 for costs· and

---

[1]The infant's doctor neither testified nor provided an affidavit as required by *R.* 4:44–2. The court permitted the "friendly" to go on, on counsel's representa-

$4,750 for counsel fees. *See R.* 4:44–3. The proposed settlement includes a request that the court approve defendant's purchase (at a price represented to be $14,750) of what was described as an annuity. In fact, this is a contract with a set rate of interest, 7.5%, which is guaranteed to pay to the infant, upon reaching the age of 18, the sum of $20,362. The child is now 13 years-of-age, and the investment contract covers approximately a five-year period.

The question presented is whether this court has the discretionary power to approve such an investment of the infant's funds. There is no reported decision that addresses this very question. The court has reconsidered its initial negative ruling, and continues to hold that the investment is not permissible.

The court rules applicable to this question are *R.* 4:48A and *R.* 4:44–3. The statutes that must be examined are *N.J.S.A.* 3B:15-1, –11, –12, –16 and –17. *N.J.S.A.* 3B:15-16 provides:

> Where the estate of a minor for whom a guardian has been or is to be appointed by a surrogate, consists of or is likely to consist of the proceeds of a judgment recovered in favor of the minor in any court of this State, the court, on application of the guardian or a person entitled to be appointed as guardian, by its order *may dispense with the giving of a bond by the guardian* where the order directs that the moneys be paid into the Superior Court for the benefit of the minor and that the moneys, or any part thereof, shall be deposited to the credit of the court in an interest-bearing account in, or in interest-bearing certificates of deposit of a responsible bank, savings bank or trust company, or in an account in, or in interest-bearing certificates of deposit of, any savings and loan association of this State, or any federal savings and loan association, having its principal office in this State, the accounts of which are insured by the Federal Savings and Loan Insurance Corporation, designated by the court. [Emphasis supplied]

Thus on its face, the statute, *N.J.S.A.* 3B:15–16, is applicable to the proceeds of a judgment in favor of a minor. This "friendly" settlement results in just such proceeds. The statute, however, is permissive. The court "may dispense with the giving of a bond by the guardian" if the funds are deposited with the court. *N.J.S.A.* 3B:15–17 allows the court to direct the

---

tion that the doctor's affidavit would be submitted, consistent with unsworn medical reports received by counsel.

surrogate to invest such funds in U.S. savings bonds,[2] or in a banking institution. It is *N.J.S.A.* 3B:15–1 that provides:

> The court or surrogate appointing a fiduciary in any of the instances enumerated below shall secure faithful performance of the duties of his office by requiring the fiduciary thereby authorized to act to furnish bond to the Superior Court in a sum and with proper conditions and sureties, having due regard to the value of the estate in his charge and the extent of his authority, as the court shall approve:
>
> . . . .
>
> d. When the office to which the person is appointed is any form of guardianship of a minor or mental incompetent, except as otherwise provided in N.J.S. 3B:12–16 or N.J.S. 3B:12–33 with respect to a guardian appointed by will. . . .

Only by first reading the general statute, *N.J.S.A.* 3B:15–1, does the permissive language of *N.J.S.A.* 3B:15–16 and the language of *R.* 4:48A make sense. The general statute requires a bond for any guardianship of a minor's property (with exceptions not relevant here). The specific statute allows the court to "dispense with the giving of a bond by the guardian" where the funds are proceeds of a lawsuit and (if $5,000 or more) are to be deposited with the court or the surrogate. *Rule* 4:48A(a) provides:

> In the event of a judgment for an infant after trial or settlement, the court shall dispense with the giving of a bond and, *except as otherwise ordered by the court,* shall direct the proceeds of the judgment, if it does not exceed $5,000 to be disposed of pursuant to N.J.S.A. 3B:12–6, and if it exceeds the same, then to be deposited in court pursuant to N.J.S.A. 3B:15–16 and –17. A copy of the order directing deposit of the proceeds shall be furnished by the court to the surrogate. [Emphasis supplied]

The intention of both the statute (*N.J.S.A.* 3B:15–16) and the rule (*R.* 4:48A) is clearly to preserve the minor's funds by avoiding the bonding expense where there is an alternative means to safeguard the funds. The alternative means specifically approved by the Legislature are the deposit in court or with the surrogate. The question is, did the Legislature thereby intend to preclude other means?

---

[2]The court takes judicial notice that the current available interest on U.S. savings bonds is 6% payable in 12 years.

In the case before this court, counsel for the minor seeks approval of another form of investment designed to meet the same goals: preservation of the minor's settlement proceeds by avoiding the cost of bond, while earning maximum interest consistent with safety of principal and protection against invasion until the child reaches majority. The insurance contract that is proposed is said to meet those goals.[3] There is no suggestion that counsel or the guardian have anything but the child's best interest at heart. However, if approval of a variety of investment forms is within the court's discretion, then the court must also review and potentially take testimony and other proofs regarding such forms of investment as may be proposed in each case. The question is whether *R.* 4:48A(a) contemplates any order for disposition of an infant's settlement of $5,000 or more other than by deposit in court pursuant to *N.J.S.A.* 3B:15–16 and –17. Such discretionary authority would have to be found, if at all, in the rule language "except as otherwise ordered by the court."

Our Supreme Court in *Matter of Conda,* 104 *N.J.* 163 (1986) has recently interpreted the controlling statute and court rule. The literal holding of the case, made in response to a surrogate's challenge to *R.* 4:48A, is that it does not conflict with the statutory scheme because, as interpreted by the Supreme Court, it incorporates the three statutory alternatives for investing the proceeds of a minor's judgment. Ironically, the argument that the Superior Court rejected in *Matter of Conda* was that *R.* 4:48A impermissibly exceeded the Court's rule-making authority by requiring infant's proceeds to be deposited with the surrogate in all cases. The very phrase in the rule that is interpreted is "except as otherwise ordered by the court." The Supreme Court stated in *Matter of Conda,* that

---

[3]Since a copy of the contract has not been submitted this court cannot verify the interest and principal amounts, whether the contract cannot be accelerated or converted prior to the minor's 18th birthday and whether it is then payable only to her.

"clearly *R.* 4:48A authorizes judges to dispose of minor's funds pursuant to any of the three statutory alternatives and there is thus no conflict with the scheme established by the legislature." *Id.* at 169. The Supreme Court held in that case that *R.* 4:48A(a) permits the proceeds of a judgment in favor of an infant, where such proceeds are $5,000 or more, either "to be deposited in court pursuant to N.J.S.A. 3B:15–16" or pursuant to *N.J.S.A.* 3B:15–1(d) requiring a bond when a guardian is appointed to receive and retain custody of a minor's estate; or pursuant to *N.J.S.A.* 3B:15–11 and –12 requiring an appropriate bond to be set by the court where a guardian is allowed to deposit cash in the bank for the benefit of an infant.[4]

The parties' proposed settlement, including the insurance contract, does not fall literally within any of the three statutory alternatives. Thus, the question is whether this court is authorized to approve such a contract and, if so, what factors should be considered and what standards met before such an application is approved. The only reported case that provides some guidance is *Matter of Guardianship of A.D.L.,* 208 *N.J.Super.* 618 (App.Div.1986). The question before that court was "whether a court may authorize a guardian to invest a minor's funds in an annuity contract which contemplates deferred periodic payments extending beyond minority." The Appellate Division went on to hold "that there is no bar to such authorization, but that it should not be granted in every case." That case did not literally involve the proceeds of an infant's settlement, but rather the infant's portion of the proceeds of a wrongful death action arising out of his father's death. The net proceeds for the child's benefit were $166,667, a sum which had been approved by a United States District Court in Califor-

---

[4] The literal words of *R.* 4:48A(a) appear to require the court to dispense with a bond irrespective of whether the proceeds are directed pursuant to *N.J.S.A.* 3B:12–6 or 3B:15–16 and –17, or "as otherwise ordered." That cannot be the intention of the rule. The Supreme Court in *Matter of Conda, supra,* has explained the other alternatives available to the trial court (under *N.J.S.A.* 3B:15–1(d), –11 and –12) and both require bonds.

nia where the wrongful death suit was brought. Initially, A.D.L.'s mother had obtained letters of general guardianship from the county surrogate in New Jersey and the funds were paid jointly to the mother as guardian and to the surrogate. The guardian subsequently applied for permission to use the funds to purchase an annuity contract. Here the application precedes any payment of the judgment. Nevertheless, if funds could be withdrawn from the surrogate's control to purchase an annuity, there appears to be no reason why the immediate purchase of an annuity could not be approved in a similar case. But this case is dissimilar in a very significant aspect.

The major dissimilarity in the case before this court is that *R.* 4:48A, as interpreted by our Supreme Court, governs the proceeds of this settlement. That rule does not govern other infants' funds, such as those at issue in *Guardianship of A.D.L., supra.* The holding of *Matter of Conda* indicates that the court's authority under the phrase "except as otherwise ordered by the court" in *R.* 4:48A(a) is limited to "the three statutory alternatives." [5]  In fact, the Supreme Court announced at the conclusion of *Matter of Conda* that it would refer to the Chief Justice and the Administrative Director of the Courts for evaluation "the continued desirability of the present practice of requiring deposits in court when recovery exceeds $5,000 (as compared to a more frequent use of other options)." In light of the rest of that opinion, it is beyond the discretionary power of this trial court to approve a different "option," not contemplated by the Legislature in its recent revision and recodification of what is now *N.J.S.A.* 3B, chapters

---

[5]The interpretation of the commentator to the rules is not inconsistent with that result. See *Pressler, Current N.J. Court Rules,* Comment *R:* 4:44–3 (1987) in which the author states:

> R. 4:48A applies to all judgments in favor of both infants and incompetents, requires disposition of the proceeds in accordance with N.J.S. 3B:15–16 and –17 unless the court otherwise orders and unless the judgment is in favor of an infant in an amount not exceeding $5,000. [*Id.* at *898*]

12 and 15; or by the Supreme Court in its interpretation of *R.* 4:48A.[6]

The court has considered the following factors before reaching its decision:

1) The minor in this case will be living outside of Union County and indeed outside of the United States in Santo Domingo. Thus upon reaching the age of majority, assuming she is still living out of the country, transfer of funds to her by the contracting insurance company would be simpler and less burdensome for her than having to apply to the Surrogate of Union County for release of the funds.

2) The available interest rate under the contract of 7.5% is approximately ½% higher than the current treasury bill rate and higher than the most favorable current rate available in a bank certificate of deposit for the five-year period. The interest earned by funds deposited with the surrogate would fluctuate with market rates over the five-year period, whereas the contract proposed for purchase will have a fixed interest rate of 7.5%. Obviously we cannot know whether interest rates over the period will average more or less than the 7.5% offered under the contract. The *guardian ad litem* appointed by the court for purposes of this settlement indicated that she was not aware of the alternative investment possibilities and could not make an election. Counsel for the guardian, representing the interest of the infant, strongly urged the fixed interest rate rather than the fluctuating interest rate.

3) The court has considered that funds invested in the contract will be totally unavailable to the minor until she reaches the age of 18, whereas funds deposited with the surrogate are available under appropriate circumstances, for good cause, to be withdrawn. See *N.J.S.A.* 22A:2-30, as cited in *Matter of Conda, supra,* 104 *N.J.* at 173-174. Here the child's mother testified that she was aware of her obligation and anticipated being able to support the minor. There is nothing in the record to indicate that there would be any emergent need of the funds for the benefit of the minor during the next five years. In addition, the minor's continued residence in Santo Domingo with her mother, which is what the mother testified is contemplated, would make it cumbersome and inconvenient, as well as expensive, to apply for any withdrawal of funds on deposit with the surrogate. Thus any advantage that is theoretically found in the availability of the withdrawal option is not a practical one in this case. Indeed, the unavailability of the funds for withdrawal might be seen as an advantage to the contract option.

---

[6]It would appear, under the reasoning set forth herein, that "structured settlements," which involve insurance contracts similar to that allowed in *Guardianship of A.D.L., supra,* are not permitted (See *Matter of Conda, supra* ) under R. 4:48A. If that is not an intended or desirable outcome, the Supreme Court's review is likely to deal with it.

4) Under the new tax law, monies held for the benefit of a minor under the age of 14 are taxable at the parent's applicable rate. There is no information available to the court with respect to what the mother or the father's tax brackets are. It is a matter of record that the minor's parents are divorced and the mother is remarried. Thus even if the applicable tax rate is no higher than that otherwise applicable, the complications of allocating the tax between the parents and the potential for confusion, if not argument, between the parents individually and as against the Internal Revenue Service are noted. The annuity contract, by contrast, imposes no tax consequence upon the earnings until after their withdrawal by the child at the age of majority.

Based upon these factors, the proposed contract would appear to be a favorable option in this case, if it were a permissible option. The court concludes that at present, it is not. This form of investment of the minor's proceeds may well be permitted in the future by court rule, or by legislative action. But at present it is not within the discretionary power of a trial court. That there is no objecting party is not a sufficient basis for expanding the power of the court.