premised upon *N.J.S.A.* 59:2–2: liability of a governmental entity "for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."

We do not extend *Warrington* to the facts of the appeal before us. *Warrington* is a precedent only that a commercial establishment which provides parking facilities for its patrons across a public roadway has a duty to exercise reasonable care for their safe passage from there to the commercial establishment and back. A readily distinguishing fact is that the school plaintiff attended did not own or provide the parking facility across Warwick Road from the school.

We point out additionally that specific immunities under the Tort Claims Act would be applicable, even if, contrary to our view *respondeat superior* liability is assumed under *Warrington:* governmental immunity from liability for failure to provide police or crossing guard protection, *N.J.S.A.* 59:5–4, and for failure to provide ordinary traffic warning signals or similar devices, *N.J.S.A.* 59:4–5.

We affirm.

J.M.W., PLAINTIFF, v. M.D. AND F.B., DEFENDANTS.

Superior Court of New Jersey
Chancery Division Family Part
Camden County

Decided June 11, 1987.

8

*James R. Hendren* for Plaintiff, J.M.W., (*Avena, Hendren, Friedman and Klamo,* P.A.).

*Saverio R. Principato* for Defendant, M.D., (*Saverio R. Principato,* P.C.).

*F.B.,* appearing Pro Se.

*James H. Waller,* law guardian for the minor child, B.A.W.

NATAL, P.J.F.P.

This matter came before the court upon a petition filed by the Plaintiff, J.M.W., for an order permitting disbursement of the sum of $35,000 currently held in the trust account of her attorney. This sum represents the initial installment of a total of $55,000 to be paid by the Defendant, M.D., in consideration of J.M.W.'s stipulation to dismiss with prejudice the paternity and support complaint filed against him. The funds were deposited in the trust account of Plaintiff's attorney pursuant to an order approving the settlement of this matter pending the decision on Plaintiff's petition.

The Plaintiff, J.M.W., petitions the court for the following relief:

1. Court approval of payment of attorney's fees incurred by the Plaintiff, natural guardian, on behalf of the minor, out of a judgment recovered on the minor's behalf.

2. Waiver of the provisions of *R.* 4:48A and *N.J.S.A.* 3B:15–16 and 17 requiring the proceeds of any minor's judgment in excess of $5,000 to be deposited with the Camden County Surrogate's Office for investment.

3. Waiver of the statutory requirement of *N.J.S.A.* 3B:15–16 that the guardian post a surety bond with the Camden County Surrogate's Office in the event that the court permits her to privately invest the proceeds of the judgment obtained on behalf of her daughter.

4. Court approval of the plaintiff's proposed plan to invest the net proceeds of the minor's judgment in variable life insurance with Prudential Insurance Company.

5. Court approval of a $400 per month withdrawal from the principal and earnings to assist with the support of B.A.W.

By way of background, the Plaintiff J.M.W. is the mother of the minor B.A.W., who was born on May 31, 1974. J.M.W. filed a complaint on January 24, 1986, alleging that the Defendant M.D. is the father of B.A.W. and asking the court to enter an

order establishing paternity and for support pursuant to *N.J. S.A.* 9:16-1 *et seq.* M.D. denied paternity and requested a jury trial on this issue pursuant to *N.J.S.A.* 9:17-49(b) and *R.* 5:14-1. Prior to B.A.W.'s birth, J.M.W. was married to the co-defendant, F.B. They were divorced in February 1974. On the day of trial, the parties appeared before the court and advised that a settlement had been reached. In order to protect the best interests of B.A.W., the court appointed James H. Waller, Esq. as law guardian pursuant to *N.J.S.A.* 9:17-47. Subsequently, the parties spread the terms of the settlement on the record.

By order of February 20, 1987, the court retained jurisdiction over the disbursement of the settlement proceeds in this matter. Jurisdiction over this matter is also derived from the doctrine of *parens patriae* under which it has long been settled that it is the inherent right of a court of equity to intervene for the protection of an infant.

J.M.W. seeks the court's permission to disburse the sum of $35,000 currently in her attorney's trust account in the following manner:

A. $5,000 to be paid to her attorney in full satisfaction of his fee for legal services rendered in this matter;

B. $28,000 to be invested in variable life insurance with the Prudential Insurance Company; and

C. $2,000 to be withheld in lieu of dividends or withdrawals for the first year of the investment.

A petition for review filed by the Surrogate of Burlington County in the *Matter of Conda*, 104 *N.J.* 163 (1986) raised certain perceived problems in the handling of minors' funds. In that opinion, the Supreme Court referred these matters to the Chief Justice and the Administrative Director of the Court for evaluation and guidelines. This court is unaware of the publication of the same and accordingly shall decide these issues according to the applicable court rules, statutes and case law.

## COUNSEL FEES

For guidance with respect to this issue, the court looks initially to *R.* 4:44–3 which states in relevant part:

4:44–3. Hearing; Order; Expenses

All proceedings to enter a judgment to consummate a settlement in matters involving infants and incompetents shall be heard by the court without a jury. If the court approves the settlement it shall enter an order reciting the action taken and directing the appropriate judgment in accordance with R. 4:48A. The court, on the request of the claimant or his attorney or on its own motion, may approve the expenses incident to the litigation, including attorney's fees....

The Supreme Court of New Jersey noted in *Conda* that it has long been held that the estate of a minor should not be charged for the support and maintenance of a minor where others are responsible and able to do so.... [I]t has also been said that a minor's funds may be so used where those responsible for his support cannot provide it. [104 *N.J.* at 170.]

It was further noted that these principles have been, for the most part, codified by the Legislature in our statutory law. *N.J.S.A.* 3B:12–43 permits the guardian of a minor's estate to expend or distribute so much or all of the income or principal of his ward for the support, maintenance, education, general use and benefit of the ward and his dependents in the manner, at the time or times and to the extent that the guardian, in the exercise of a reasonable discretion, deems suitable and proper, with or without court order, with due regard to the duty and ability of any person to support or provide for the ward, if the ward is a minor, ... and with or without regard to any other funds, income or property which may be available for that purpose.

Finally, *N.J.S.A.* 3B:12–47 provides:

funds expended by the guardian of the estate of a minor or mental incompetent under N.J.S.A. 3B:12–43 may be paid by the guardian to any person, including the ward, to reimburse for expenditures that the guardian might have made....

The court is satisfied that J.M.W. retained the services of her attorney, James R. Hendren, Esq., for the purpose of seeking support on behalf of B.A.W., a minor. The court is also satisfied that the services of her attorney were suitable and proper under the circumstances and a necessary expense of J.M.W.'s paternity and support application.

■ At this time, Mr. Hendren has not received any payment from J.M.W. in either full or partial satisfaction of the attorney's fees she incurred in this matter on behalf of her child. In

the event that J.M.W. had paid any fees she would have been entitled to reimbursement pursuant to *N.J.S.A.* 3B:12–43. Therefore, this court sees no reason why these funds cannot be disbursed directly to her attorney, Mr. Hendren.

In an affidavit of services furnished to the court, Mr. Hendren certifies that 67 hours of his time were expended in this matter. His hourly rate customarily charged is $90 per hour which would result in a total fee of $6,030. Mr. Hendren is willing to accept a lump sum payment of $5,000 in full satisfaction of his fee. The court finds J.M.W. needed the services of an attorney due to the complexity and extent of this case.

Furthermore, the court finds that the lump sum payment of Mr. Hendren's fee in the amount of $5,000 is reasonable and in the best interest of the minor considering Mr. Hendren's experience and degree of expertise in this area. The law guardian concurs in J.M.W.'s request for approval of this fee.

Accordingly, the court approves the disbursement of $5,000 to James R. Hendren, Esq. in full satisfaction of the attorney's fees incurred by J.M.W. on behalf of B.A.W.

## DISTRIBUTION AND INVESTMENT

In determining the remaining three requests for relief, reference is made to Rule 4:44–3 which directs the court upon approval of a settlement involving a minor's funds to enter the appropriate judgment in accordance with *R.* 4:48A.

Rule 4:48A mandates:

(a) Infant. In the event of a judgment for an infant after trial or settlement, the court shall dispense with the giving of a bond and, except as otherwise ordered by the court, shall direct the proceeds of the judgment, if it does not exceed $5,000 to be disposed of pursuant to N.J.S.A. 3B:15–16 and 17. A copy of the order directing deposit of the proceeds shall be furnished by the court to the surrogate.

The court finds that the settlement entered into by the parties and approved by the court involves an infant and the proceeds are intended to provide support for this infant until majority. Accordingly, Rule 4:48A is applicable.

Judge Pressler's comment to *R.* 4:48A is illuminating in the interpretation of the rule and the statute, *N.J.S.A.* 3B:12-6.

This rule, adopted effective September, 1971, was intended *to make mandatory* the deposit requirements of *N.J.S.A.* 3A:7-14.1 to all judgments entered in favor of infants and incompetents *except* in two situations: first, where the judgment did not exceed $3,000.00, in which case the statutory waiver of guardianship applies, and second, where the court, for good cause and in the infant's or incompetent's interest, specifically otherwise orders. See, further, Comment on R. 4:44-3. The rule was amended effective September, 1983, to increase the $3,000 amount to $5,000 in accordance with *N.J.S.* 3B:12-6 and to replace repealed Title 3A references with the correct Title 3B references.... [Emphasis added.]

The comment to *R.* 4:44-3 is cross referenced with similar language.

J.M.W. contends that the language "except as otherwise ordered by the court" permits the court to approve her proposed investment and waive the bonding requirement based on a showing of good cause. This court is not inclined to indulge in her interpretation of the rule.

Where the amount exceeds $5,000 and the court uses its authority under the 'except as otherwise ordered' phrase, the only alternative dispositions are those provided in *N.J.S.A.* 3B:15-1 and 3B:15-11, both of which require the giving of a bond. It would be illogical to mandate dispensing with the bond requirement in all cases and then allow alternatives that require a bond. That was not the Court's intent when it adopted the rule. [*Conda*, 104 *N.J.* at 168-169.]

 Even assuming that the court had the authority to waive the bonding requirement, the court is not satisfied that J.M.W. has proven "good cause" by a preponderance of the evidence. She desires to invest $28,000 of the $30,000 remaining in the first installment in Variable Life Insurance. She, not the child or the court-appointed law guardian, is proposed to be the owner of this account. The principal is neither insured nor is the projected rate of return of 10.35% guaranteed.

While the court finds J.M.W.'s goals of maximizing the investment rate and providing flexibility in investment are well intended, they do not provide the security and predictability of an insured guaranteed rate of return. The purpose of the bonding requirement is to protect the infant from loss of the

investment through mismanagement. J.M.W.'s plan does not protect the infant from loss of principal or loss of income by poor investment return. The court is also somewhat concerned with J.M.W.'s management skills in that her current monthly budgeted expenses as set forth in her Case Information Statement exceed her income by approximately $1,400 per month.

J.M.W. also suggests that this investment is necessary to avoid the tax liability to her on the income of this fund at her tax rate pursuant to the new tax act. The desired result of tax-free investment could also be accomplished by investment in government-insured bonds.

The court accordingly orders that the proceeds be either turned over to the Camden County Surrogate for deposit in accordance with *R.* 4:48A and *N.J.S.A.* 3B:15–16 and 17 or that an appropriate bond be posted with the Surrogate's Office in the amount of $30,000.

The purpose of the bond is to insure against loss of any of the principal of the investment and to guarantee a minimal yearly return equivalent to the 6% per annum that is presently available through the Surrogate's Office. J.M.W. is to decide which alternative she desires within forty-five days of the date of this opinion. Until either the funds are turned over to the Surrogate or an appropriate bond is posted, the funds are to remain invested in the interest-bearing account established previously in J.M.W.'s attorney's trust account.

Likewise, the additional amounts to be received for the benefit of B.A.W. pursuant to the settlement must either be deposited with the Surrogate pursuant to the rule and statute or J.M.W. must post a bond in the full face amount of the future payments under the same conditions. These funds may not be withdrawn by J.M.W. prior to her daughter's attendance at college. The court is reserving the remaining $20,000 and accrued interest to pay for B.A.W.'s college education. In the

event she does not attend college, any remaining funds may be paid over to her upon emancipation.

In considering the request for a $400 per month withdrawal to assist with the support of her daughter, the court has reviewed the Case Information Statement filed by J.M.W. to determine the child's needs.

Although the court finds it cannot use a child support guide-line analysis in this matter, as there is only one source of income, the court has taken note of the recommended amounts deemed necessary for the support of one child at different familial income levels. The court does not find J.M.W.'s re-quest for $400 per month to be unreasonable.

The parties intended that this lump sum settlement would be used for the support of the minor until her majority and accordingly the court will permit monthly withdrawals for that purpose.

The court notes that based on the budget submitted by J.M.W., she would be contributing additional funds over and above this amount for the actual support of her daughter. Accordingly, the court will permit a monthly withdrawal in the amount of $400 per month from the $30,000 investment. As ordered previously, the remaining $20,000 and any income de-rived therefrom is not to be used except for the college edu-cation of B.A.W. or, in the event she does not attend college, to be turned over to her at emancipation.

J.M.W. is also ordered to provide the law guardian and the Surrogate with an accounting of the funds spent on behalf of B.A.W. on a quarterly basis.

A judgment will be entered by the court in accordance with this opinion. A copy of this opinion and judgment will be forwarded to the Camden County Surrogate in accordance with *R.* 4:48A.