100 N.J. Super. 313 (1968)
241 A.2d 844
VERNON FRANCIS, ETC., ET AL., PLAINTIFF,
v.
WILLIAM HARRIS AND JOSEPH SAMUEL WILLIAMS, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 8, 1968.
*314 Mr. Robert B. Turk, guardian for Vernon Francis, appearing pro se (Messrs. Cohn and Turk, attorneys for plaintiff).
Mr. George W. Nicastro, Legal Assistant to Counsel to Essex County Welfare Board (Mr. John A. Matthews, Jr., Counsel to Essex County Welfare Board).
JOHN A. ACKERMAN, J.S.C.
This matter involves the construction and interpretation of N.J.S.A. 44:10-4, the repayment provision of the act entitled "Assistance for Dependent Children", (ADC), N.J.S.A. 44:10-1 et seq., and specifically deals with the question whether the Essex County Welfare Board may seek reimbursement for aid granted to a dependant child from the proceeds of a recovery in tort for personal injuries suffered by the child.
On September 21, 1962, Vernon Francis, also known as Vernon Witt, was struck by an automobile. He was then 12 year old and was living with his grandmother, Mrs. Marie Francis. He was treated at Newark City Hospital for about a month and was discharged on October 23, 1962. On December 1, 1962, he began receiving assistance as a dependent child under the above statute and he has continued to receive such aid up to the present time. The assistance payments for his benefit were made to Mrs. Francis and on November 21, 1962, prior to the commencement of payments, the Essex County Welfare Board, pursuant to the provisions of N.J.S.A. 44:10-4(a), took from Mrs. Francis the customary form of repayment agreement under the terms of which, in consideration of the granting of such assistance, she promised to repay the Welfare Board to the extent of any assistance granted and specifically agreed that "the purpose of this promise and agreement is to assure repayment to the County Welfare Board of the amount of such financial assistance *315 as may be granted during the period pending my receipt of certain funds which are anticipated by virtue of a claim against State of New Jersey Unsatisfied Claim and Judgment Fund, A.S.R. 25225-N, Code W, arising out of accident involving Vernon Witt who was hit by an automobile on 9/21/62."
Thereafter Mrs. Francis, acting as Vernon's guardian ad litem, instituted suit against the uninsured driver of the car which struck him. As is apparent from the formal agreement with the Welfare Board, prior notice had been given to the Unsatisfied Claim and Judgment Fund Board as required by law to perfect a claim against the Fund. See N.J.S.A. 39:6-65. On June 30, 1967, a judgment was rendered in favor of Vernon by his guardian ad litem, Mrs. Francis, against defendant Joseph Samuel Williams, the driver of the car, in the amount of $8,000, which was subsequently paid by the Fund. By the terms of the order for judgment, Vernon's attorney, Robert B. Turk, Esq., was designated as his guardian for the limited purpose of preserving, maintaining and disbursing the funds received and, after payment of hospital and medical expenses and attorney's fees in accordance with the judgment, a balance of $4,943.25 remained on hand. In the interim, the Welfare Board had given notice of its claim under the repayment agreement for reimbursement of the sum of $3,561.66, for assistance given to Vernon from December, 1962 through June, 1967, and the order for judgment directed Mr. Turk, as Vernon's attorney and guardian, to direct an order to show cause to the Welfare Board to seek a determination as to why the entire balance of recovery in his hands as guardian should not remain Vernon's funds, free from any claim by the Welfare Board for reimbursement for payments made for Vernon's benefit.
The guardian's claim is that funds recovered by a child for personal injuries are inviolate and cannot be used to buy ordinary necessities of life nor to reimburse welfare agencies for assistance granted. His argument is based primarily *316 upon the holdings in the New York case of Application of Woods, 32 Misc.2d 745, 222 N.Y.S.2d 903 (Sup. Ct. 1961) and the recent decision in Essex County Welfare Board v. Hellams, 98 N.J. Super. 181 (Cty. Ct., Probate Div. 1967), which is now being appealed. Although, as is demonstrated hereinafter, both of these decisions are distinguishable, the rationale of the guardian's argument is set forth in the following quotation from the Hellams case where the court, adopting the reasoning and philosophy of the Woods case, said (98 N.J. Super., at p. 185):
"The court held that the damages could not be used to reimburse welfare, noting that:
`The infant's money was awarded to compensate for his pain, his suffering, and his incapacity occasioned by the accident, not to purchase necessaries for him during his minority. * * * When that money is withdrawn to purchase necessities, it is being misapplied. (DeMarco v. Seaman, 157 Misc. 390, 283 N.Y.S. 697.) * * * [T]he communal responsibility in the sense of public welfare, should not be permitted to be shifted to this infant, because, fortuitously, he was gravely physically injured and was successful in now having on hand what the family might consider a financial windfall. (Leon v. Walker, 1 Misc.2d 219, 147 N.Y.S.2d 331.)' (at p. 906)
Even when such a child reaches 21 he has a right to expect to receive the money awarded to him for his injury with interest and `not a bundle of court orders showing that his funds were spent for the ordinary necessities of life which others were obligated to furnish him.' Gaffney v. Constantine, 87 N.Y.S.2d 131, 132 (Sup. Ct. 1949)."
Although the guardian's argument evokes sympathy, this court is compelled to conclude that it ignores the policy adopted by our legislature which is plainly expressed in the repayment statute and it accordingly holds that the Essex County Welfare Board is entitled to the reimbursement sought in this case.
Our statute providing for assistance to dependent children is designed, as are similar statutory programs in other states, to take advantage of federal funds available to the states for such programs under the federal Social Security Act. Although state plans must meet certain standards and conditions *317 prescribed by federal law and must be approved by the Secretary of Health, Education and Welfare in order to qualify for federal grants-in-aid (see 42 U.S.C.A. § 601, et seq.,), each state has wide latitude in deciding how the programs are to be organized and administered, who is eligible for aid, how much shall be granted to eligible persons, and what provisions shall be made for repayment and reimbursement from those receiving assistance. There are differences as well as similarities within the state programs, which reflect economic conditions in the individual states and the desires of the citizens thereof as expressed by their legislative representatives in state law and policy. There is considerable variety among the states in the provisions for repayment and reimbursement and, as stated above, this is a matter for each state to determine. See Characteristics of State Public Assistance Plans Under the Social Security Act (Public Assistance Report No. 50, U.S. Department of Health, Education and Welfare, 1964 Edition.)
Subsections (a) and (b) of N.J.S.A. 44:10-4 provide in specific terms for repayment from recipients of ADC payments. Subsection (a) is directly involved here. The statute provides:
"(a) Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child pursuant to this act, and it appears that there is pending a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, the county welfare board may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted. Upon any refusal to make repayment in accordance with such promise, the county welfare board may take all necessary and proper action under the laws of this State to enforce such promise, and the granting or continuing of assistance, as the case may be, shall be deemed due consideration therefor.
(b) Whenever any child with respect to whom assistance has been paid pursuant to this act shall die prior to the attainment of his twenty-first birthday, and shall leave an estate, the total amount of assistance paid with respect to such child pursuant to this act *318 and pursuant to any of the acts hereby repealed, shall be a valid and enforceable claim against such estate, with priority over all other unsecured claims except reasonable funeral expenses and terminal medical and hospital expenses, and the county welfare board shall take all necessary and proper action under the laws of this State to enforce such claim.
(c) The county welfare board may, with the consent and approval of the bureau of assistance, compromise and settle any claim for repayment of assistance granted under this act.
(d) The bureau of assistance shall determine and cause to be made such financial adjustments as are necessary to maintain a correct proportional participation in such repayments as among the counties, State and Federal Government, and shall pay to the Treasurer of the United States the determined Federal portion."
It is clear that a cause of action to recover in tort for personal injuries suffered by a child is a "claim or interest legally or equitably owned by such child or by either or both of his parents" within the literal meaning of subsection (a) of the above statute. 7 Words and Phrases (Perm. Ed) "Claim", p. 455 et seq; Friedrichsen v. Niemotka, 71 N.J. Super. 398 (Law Div. 1962).
Since its effective date in 1960, the statute has been so construed and applied by those charged with its administration. The Manual of Administration, promulgated by the Department of Institutions and Agencies as an official regulation to govern the administration of the ADC program by county welfare boards, provides in section 2273 as follows:

"2273. Written Promise of Repayment in ADC

1. Legal Authority
R.S. 44:10-4 as amended by Chapter 80, P.L. 1962, authorizes the county welfare board to require a written promise to repay from the natural or adoptive parent(s) in any instance where there is pending payment to the child or such parent(s) funds arising from a claim or interest legally or equitably owned by such child or such parent(s). This authority shall be exercised in accord with the following policy and procedure.

2. Statement of Policy
a. When at the time of application there is pending a claim for statutory benefits, such as OASDI, veterans benefits, workmen's compensation, temporary disability benefits, or a suit or claim arising from a contract, legacy, inheritance, accident, etc., CWB shall require the natural or adoptive parent, or both such parents *319 when available, to sign a written promise to repay for assistance granted from any funds subsequently received from such source.
Form ADC-10, Promise to Repay, shall be used for this purpose. (See 2200 Appendix VIII for sample Form ADC-10)
b. When at any time during receipt of assistance it is determined that there is pending such a claim or suit, action shall be taken to secure a promise of repayment as in a. above.
c. When in relation to either a. or b. above there appears to be eligibility for benefits or compensation but no claim has been filed the parent(s) shall be expected to make such claim promptly.
d. Refusal of the parent(s) to comply with a. or b. above, or refusal to file a claim as in c. above renders the family ineligible for ADC.

3. Evaluation after Claim Settled
If and when a lump sum payment is received as a result of an approved claim or pending suit, etc., CWB shall evaluate the situation and, in accordance with the provisions of 502. of the Budget Manual decide
a. Whether to require repayment, and continue assistance with any necessary budget adjustment for recurring income, or
b. Whether the case is to be suspended or closed and the available funds used for current support." (Emphasis added).
A similar administrative interpretation appears in the Categorical Assistance Budget Manual, also issued by the Department as an official regulation for use and application in determining need for assistance under the program and for budgeting the amount of payments to recipients. See Budget Manual, § 504.3 h. These regulations were promulgated in accordance with express authority granted by the statute, N.J.S.A. 44:10-3.
It is apparent from these regulations that in the administration of the program an uncollected tort claim vested in a dependent child is regarded as a potential rather than an actual resource and does not enter into budgeting or affect the amount of assistance to be granted to the child during the time when suit for recovery is pending, but that it is clearly looked upon as a source for repayment of the assistance provided while the claim is pending. After collection, the funds received, to the extent not used for repayment of assistance previously granted, are deemed to be resources to be considered in budgeting the needs of a child *320 for assistance or as a factor which justifies the termination thereof. Such administrative interpretation is clearly entitled to weight in the construction of the statute. Mastrobattista v. Essex County Park Commission, 46 N.J. 138, 146 (1965); Lane v. Holderman, 23 N.J. 304, 322 (1957); Lowden v. Bd. of Rev., Div. of Emp. Sec., 78 N.J. Super. 467 (App. Div. 1963); Cammarata v. Essex County Park Commission, 46 N.J. Super. 262 (App. Div. 1957), affirmed 26 N.J. 404 (1958).
Although there are no reported decisions other than Hellams, supra, which deal with the right of county welfare boards to reimbursement under N.J.S.A. 44:10-4(a) out of tort recoveries received for personal injuries sustained by dependent children who have received ADC assistance, judgments for repayment out of such funds have been entered in a number of unreported cases and these constitute judicial precedents as to the proper construction of the statute. See Essex County Welfare Board v. Freeman, Essex County Court, Probate Div., Docket No. 8496 (1965); Essex County Welfare Board v. Sims, Essex County Probate Court, Probate Div., Docket No. 8837-K (1965); Essex County Welfare Board v. Dalley, Essex County Court, Probate Div., Docket No. 8553-R (1965); Essex County Welfare Board v. Dula, Essex County Court, Probate Div., Docket No. 8672-H (1965); Essex County Welfare Board v. Morrison, Essex County Court, Probate Div., Docket No. 9495-G (1965); Essex County Welfare Board v. Lynch, Essex County Court, Probate Div., Docket No. 9499-A (1965).
New Jersey is not the only state which has provided by statute for reimbursement of ADC payments made to a dependent child out of funds received on claims for personal injuries. Pennsylvania, Illinois and, at least since 1964, New York provide for repayment from such funds.
The original reimbursement act in Pennsylvania adopted in 1937, P.L. 2045, provided that "the real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial *321 incurred by any public body or agency, whether owned at the time such expenses were incurred or acquired thereafter * * *" By an amending act in 1939, P.L. 310, a limitation was imposed which permitted such recovery only "if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred." It was held in Bronzo's Estate, 51 Lack. Jur. 129 (Orphans Court, Lack. County, 1949) that a cause of action in tort for personal injuries was not "personal property" until reduced to judgment or paid and that the mere existence of a cause of action during the time when assistance was granted did not permit reimbursement of such payments from the tort recovery when ultimately received. See also Lopes Estate, 87 Pa. Dist. & C.O.R. 577 (Orphans Court, Berks County, 1953).
By P.L. 1455, 62 PS § 1974, adopted in 1951 the legislature of the State of Pennsylvania amended the statute to provide that "* * * the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial * * * incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted * * *" This statute is much similar to the New Jersey act and is still in force. Since its enactment it has been held that reimbursement for assistance payments for the benefit of a dependent child, made while he had a cause of action for personal injuries, may be recovered from the funds ultimately received on such cause of action. Lopes Estate, supra; Matter of Ackerman, 25 Pa. Dist. & C.O.R.2d 166 (Orphans Court, Crawford County, 1961); see Matter of Lucas, 9 Pa. Dist. & C.O.R.2d 584 (Orphans Court, Clinton County, 1956); Schellhamer Estate, 30 Pa.Dist. & C.O.R.2d 675 (Orphans Court, Luzerne County, 1962); see Matter of Hoffman, 38 Pa. Dist. & C.O.R.2d 577 (Orphans *322 Court, Columbia County, 1966); see Ryan v. Hockinberry, 42 Pa. Dist. & C.O.R.2d 578 (Orphans Court, Allegheny County, 1967); Marchiafara's Estate (No. 2), 36 Pa. Dist. & C.O.R.2d 319 (Orphans Court, Philadelphia County, 1965).
The Illinois reimbursement statute, S.H.A., Ch. 23, § 819, provides that the department "shall have a charge upon all claims, demands and causes of action for injuries to an applicant for or recipient of assistance for the total amount of assistance provided for the recipient and his dependents from the time of injury to the date of recovery upon such claim, demand or cause of action * * *" This act, similar in terms to New Jersey's, has also been construed since its enactment to permit repayment of assistance granted to a dependent child out of funds received by him for his personal injuries. See Hardwick v. Munsterman, 15 Ill.2d 564, 155 N.E.2d 638 (Sup. Ct. 1959); Henson v. Johnson, 16 Ill.2d 408, 158 N.E.2d 27 (Sup. Ct. 1959); In Re Poole's Estate, 26 Ill.2d 443, 187 N.E.2d 231 (Sup. Ct. 1962); see Beck v. Buena Park Hotel Corp., 30 Ill.2d 343, 196 N.E.2d 686 (Sup. Ct. 1964); see Donoho v. O'Connell's Inc., 18 Ill.2d 432, 164 N.E.2d 52 (Sup. Ct. 1960); Grieves v. Levy, 238 F. Supp. 759 (N.D. Ill. 1965); see Lalic v. Chicago B. & O.R. Co., 263 F. Supp. 987 (N.D. Ill. 1967).
The New York statute governing reimbursement for ADC payments has recently been amended and supplemented. Under the law as it existed in 1964, subsection 1 of Social Welfare Law, § 104 (52A McKinney's Consol. Laws of New York, c. 55, p. 153) provided that a public welfare official "may bring action * * * against a person discovered to have real or personal property * * * if such person * * * received assistance and care during the preceding ten years * * *" Subsection 2 thereof provided that "No right of action shall accrue against an infant by reason of the assistance or care granted to him unless at the time it was granted the infant was possessed of money and property *323 in excess of the reasonable requirements as described in section one hundred one."
In Application of Woods, 32 Misc.2d 745, 222 N.Y.S.2d 903 (Sup. Ct. 1961), referred to above, the Court held that no portion of a $30,000 settlement of a personal injury claim made in 1957 on behalf of a dependent child could be claimed by a county welfare director under sections 101 and 104 of the Social Welfare Law as reimbursement for assistance payments made during the period from 1938 to 1960 for the benefit of the child and his mother. The case has not been cited in the New York courts in any subsequent decisions. However, in 1964, the Social Welfare Law was supplemented by the addition of section 104-a, which provides in part as follows:
"1. If a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another on account of any personal injuries suffered by such recipient, then the public welfare official for the public welfare district providing such assistance and care shall have a lien for such amount as may be fixed by the public welfare official not exceeding, however, the total amount of such assistance and care furnished by such public welfare official on and after the date when such injuries were incurred.
The welfare commissioner shall endeavor to ascertain whether such person, firm or corporation alleged to be responsible for such injuries is insured with a liability insurance company, as the case may be, and the name thereof."
It now seems clear that funds received by a dependent child as a recovery for personal injuries may be used as a source of reimbursement to welfare officials in New York. See Neilson Realty Corp. v. Motor Vehicle Acc. Indem. Corp., 47 Misc.2d 260, 262 N.Y.S.2d 652 (Sup. Ct. 1965); Snell v. Wyman, 281 F. Supp. 853 (S.D.N.Y., 1968); Policies Governing the Administration of Public Assistance (City of New York, Department of Welfare) § 184. See also Oswego Hospital v. Kessler, 204 Misc. 596, 127 N.Y.S.2d 224 (Sup. Ct. 1953); Fuller v. Galeota, 271 App. Div. 155, 63 N.Y.S.2d 849 (App. Div. 1946); Hodson v. Bloise, 173 Misc. 69, 16 N.Y.S.2d 49 (City Ct. 1939).
*324 Other states have therefore adopted and enforced policies, similar to that of this state, of requiring reimbursement of ADC assistance out of funds recovered for personal injuries, including those recovered by dependent children. See also State v. Rodrigue, 19 Conn. Sup. 49, 109 A 2d 891 (Super. Ct. 1954).
There is nothing about funds recovered by an adult on a claim for his personal injuries, nor, indeed, about such funds recovered by a minor, which immunize them from use by or on behalf of the injured person for his general needs and maintenance or as a source for reimbursing the state for welfare aid received. In the case of an adult, no less than in the case of a child, the amount recovered, except for sums recovered for special damages such as medical expenses, loss of earnings or services, and the like, are awarded to compensate the injured person for his pain, his suffering and his disability. When received by an adult, however, the funds are assets in his hands to be used as he sees fit. He may squander them if he desires to do so. Like any other assets they are subject, among other things, to the claims of his creditors and they are not the subject of any exemption from execution. See N.J.S.A. 2A:17-1 et seq.
A child is afforded special protection under our law. The Court may be said to be a general guardian of all infants and every infant coming before it becomes a ward of the court. Although an infant may acquire property, the law does not generally entrust him with its custody or control. Under our rules, an infant must be represented in any court action, including a negligence action for recovery for personal injuries, by a guardian appointed in this state or by a guardian ad litem appointed by the court. R.R. 4:30-2. Property of an infant, including any amount recovered for personal injuries, is held by a natural or appointed guardian for the child and such guardian is a fiduciary, subject to all the general duties of fiduciaries and to the supervision of the court. N.J.S.A. 3A:6-17 through 34; R.R. 4:101, 103, 105, 106. Although an infant's funds are shepherded for *325 him and ordinarily cannot be used for his support and the necessities of life, it is clear that they may be so used if those responsible for his support cannot provide it. N.J.S.A. 3A:20-1, 3A:20-2; Walling's Case, 35 N.J. Eq. 105 (Prerog. Ct. 1882); Alling v. Alling, 52 N.J. Eq. 92 (Ch. 1893); In Re Vieweger, 93 N.J. Eq. 527 (Ch. 1922); 6 New Jersey Practice, Clapp, Wills and Administration (3d ed. 1962) § 1078, 1079. Normally, upon reaching his majority the child comes into the management and control of his own funds. Like any adult, he can use such funds, including any received and remaining from recovery for personal injuries sustained during his infancy, for any purpose he desires.
It must therefore be concluded that there is no reason why county welfare boards may not secure repayment of assistance payments made to a dependent child out of personal injury recoveries in accordance with the plain terms of N.J.S.A. 44:10-4 and the regulations construing and implementing the statute, as authorized by N.J.S.A. 44:10-3.
The problems of recipients of welfare aid who are faced with demands for repayment by welfare officials, acting in accordance with statute, cannot fail to evoke profound sympathy from fellow humans, including judges who must enforce the laws. It is not denied that strong and appealing policy arguments can be made that recovery should not be sought or permitted from funds received for pain, suffering and disability, whether sustained by an adult or a child. Under our system, however, these arguments are properly made to those who formulate our laws and not to the courts. As stated by Judge Frankel in the recent decision of Snell v. Wyman, 281 F. Supp. 853 (S.D.N.Y. 1968), where a three judge court, by a majority vote, sustained the constitutionality of the welfare laws and administration regulations of the State of New York, including those requiring reimbursement for ADC payments by recipients out of personal injury recoveries:
*326 "..., we assume that rational men could agree fully with plaintiffs' view that the painful consequences of the recovery statutes outweigh the measurable benefits the State seeks from them. We also accept without questioning the view of the scholar who testified in his deposition that `any social work purpose in the recovery provisions is quite beyond [his] comprehension'. The plain flaw that none the less destroys plaintiffs' thesis is that it is brought to the wrong forum. Plaintiffs' complaints might move us to vote for changes if we sat as state legislators ...
Against plaintiffs' views, as defendants point out, there are arguments of policy which can scarcely be dismissed as frivolous, whether or not we would find them convincing if the judgments of policy were for us. The State is entitled, they note, to consider relative need and available resources in distributing its limited welfare funds. Even `trivial' recoveries ... need not be deemed beneath notice. Whether they are correct or not, legislators could plausibly judge that a sense of obligation to contribute or repay if possible serves some function relevant to the concern for human dignity. Moreover, the objectives of rehabilitation and self-support are not seriously impeded at all; ...
... If we were free to enforce what we may modestly deem our more enlightened view, we might seriously consider the changes plaintiffs propose. But we have no such power, and it is better in the end for everyone that this is so."
See also Donoho v. O'Connell's Inc., supra.
Our legislature has determined the policy as to reimbursement as set forth in the statute. It is the function and duty of this court to enforce that policy so long as it remains in force.
As stated above, the recent decision in Essex County Welfare Board v. Hellams, supra, is clearly distinguishable. In that case the Court held that there could be no recovery of ADC payments under N.J.S.A. 44:10-4 out of funds received by a dependent child in settlement of his personal injury claim because, unlike this case, the welfare board had not taken a repayment agreement as provided for in the statute. The Court also held that the welfare board had no right of recovery under the provisions of N.J.S.A. 44:7-19. It seems clear that the Court adopted the reasoning and philosophy of Application of Woods, supra, in its construction of the latter statute, which is not involved in this controversy. To the extent that its holding in this regard may *327 be deemed to apply to the construction of N.J.S.A. 44:10-4, this court feels that it should not be followed for the reasons herein set forth.
It is therefore concluded that on the facts of this case, the welfare board is entitled to the reimbursement sought. The evidence before this court is that there was no proof of the necessity of future medical treatment for Vernon which entered into the award in his favor and the order for judgment in his personal injury action did not allocate any sums for such treatment. See Marchiafara's Estate (No. 2), 36 Pa. Dist. & Co. R.2d 319 (Orphans Court, Philadelphia County, 1965) cited supra; N.J.S.A. 44:4-112, 114, 115.
An order shall be submitted in accordance with this opinion and any further necessary proceedings taken in accordance with the order for judgment entered in the cause.