246 N.J. Super. 537 (1991)
588 A.2d 403
ESSEX COUNTY DIVISION OF WELFARE, PETITIONER-RESPONDENT,
v.
O.J., RESPONDENT-APPELLANT.
ESSEX COUNTY DIVISION OF WELFARE, PETITIONER-RESPONDENT,
v.
J.R., H.S., S.O., L.C., M.S., AND S.D., RESPONDENTS-APPELLANTS.
ESSEX COUNTY DIVISION OF WELFARE, PETITIONER-RESPONDENT,
v.
M.B., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1991.
Decided March 14, 1991.
*539 Before Judges J.H. COLEMAN, DREIER and LANDAU.
Richard W. Foard, III, Staff Attorney, argued the cause for appellants (Essex County Legal Services, Rutgers Legal Aid Clinic, attorneys; Richard W. Foard on the letter brief).
Dennis J. Conklin, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, and Mary C. Jacobson, Deputy Attorney General, of counsel; Dennis J. Conklin on the briefs).
The opinion of the court was delivered by LANDAU, J.A.D.
Appellants, O.J., J.R., H.S., S.O., L.C., M.S., S.D. and M.B., are recipients of Aid to Families with Dependent Children (AFDC recipients). Each appeals from a final decision of the Director of the Division of Economic Assistance (DEA) which affirmed the termination of some or all AFDC benefits because of the refusal of the AFDC recipients to petition the Essex County Surrogate for withdrawal of individual trust funds established for minor beneficiaries after tort judgments[1] to be used for the minor's current or future support.[2]
Each of the AFDC recipients have minor children who have received a personal injury award stemming from either a motor vehicle accident[3] or lead poisoning.[4] Pursuant to N.J.S.A. *540 3B:15-16, 17, the net awards were deposited into trust funds with the Surrogate of Essex County. As required by N.J.A.C. 10:81-3.39, the Essex County Division of Welfare (ECDW) requested each AFDC recipient to assist that Agency in the presentation of a Surrogate's Court petition for release of these trust funds for the current and future support[5] of the minors for whose benefit the funds were held. All recipients were advised that failure to cooperate would result in termination of AFDC benefits for such minors.
Except for H.S., the remaining AFDC recipients ultimately agreed to cooperate with the ECDW provided they did not relinquish their rights to challenge the validity of N.J.A.C. 10:81-3.39 and with the understanding that should they prevail, all monies previously withdrawn from the trust fund by ECDW would be restored.
One Administrative Law Judge, sitting in review of the M.B. case, recommended reversal of the decision of the ECDW to terminate benefits, holding that N.J.A.C. 10:81-3.39 conflicted with N.J.S.A. 44:10-4(a) and was therefore nugatory. Although the Director agreed that the ECDW is precluded, pursuant to N.J.S.A. 44:10-4(a), from considering a minor's personal injury award for reimbursement of past payments, she disagreed with the finding that N.J.S.A. 44:10-4 and its introductory statement expressly barred the Agency from petitioning the court for release of personal injury award trust funds for current and future support.
A second Administrative Law Judge issued an initial decision in the J.R., et al. and O.J. matters on September 11, 1989 and September 18, 1989, respectively, finding that (1) N.J.A.C. 10:81-3.39(a) was not in conflict with N.J.S.A. 44:10-4(a); (2) the trust funds would not necessarily be depleted depending on the size of the trust, the length of time the recipient seeks AFDC benefits, and the willingness of the Surrogate's Court to *541 allow the release of funds; and (3) application for withdrawal affecting eligibility to receive current and future AFDC benefits were not covered by the April 9, 1985 amendment to N.J.S.A. 44:10-4(a) under the court's holding in Hart v. Fox, 204 N.J. Super. 564, 499 A.2d 553 (Law Div. 1985). The Director adopted this initial decision and affirmed termination of the AFDC benefits. We note that the Director's decisions permit the Board to require application for withdrawal.
On appeal, the AFDC recipients argue that ECDW cannot lawfully condition receipt of AFDC benefits upon petitioning the Surrogate's Court to release their children's personal injury based trust funds, whether for past, current or future support of such trust-benefitted children.
AFDC is a joint federal-state welfare program established pursuant to 42 U.S.C. § 601, et seq., to provide assistance to certain "needy" dependent children and the parents and relatives who live with and care for them so they may attain self-sufficiency. 42 U.S.C. § 601. Although states have wide latitude in determining the appropriate standard of need and level of assistance they wish to provide under the AFDC program, the states must administer their programs in compliance with applicable federal statutes and with regulations promulgated by the United States Department of Health and Human Services (HHS). Since AFDC is financed largely by the federal government on a matching-fund basis, HHS may withhold funding from a state which fails to conform its AFDC plan to the federal scheme. 42 U.S.C. § 601, § 603, § 604.
In order to aid the states in the efficient administration of their public assistance programs, federal regulations allow states to impose conditions upon applicants and recipients, which if not satisfied, may result in the denial or termination of such aid. 45 C.F.R. § 233.10(a)(1)(ii)(B). In this regard N.J.A.C. 10:81-3.39 requires AFDC recipients to take reasonable steps to attempt to secure the release of any trust funds that may be held for the benefit of a minor on whose behalf *542 assistance is sought, so that those funds, rather than public funds, might be used for the current and future support of the child. Failure to cooperate renders the household ineligible for AFDC benefits.[6]N.J.A.C. 10:81-3.39(a)(1).
Initially, we reject the AFDC recipients' contention that they cannot be compelled to petition the Surrogate's Court to release their children's trust funds. Federal and state regulations have developed a specific procedure to determine whether funds are in fact available for consideration by local welfare departments. 45 C.F.R. § 233.20(a)(3)(ii)(D) provides:
[I]ncome and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.
Pursuant to this regulation and its implementing provision in N.J.A.C. 10:81-3.39, trust funds resulting from tort settlements on behalf of children are potentially available for their support and maintenance. Unless and until an adverse ruling on a withdrawal application proves otherwise, a trust beneficiary has the "legal ability" to make these funds available, and therefore bears the burden to cooperate with the ECDW for release of the funds.
We recognize that there are conflicting societal interests in those circumstances where judgment proceeds received by reason of the injury of a child could conceivably render an entire family ineligible for aid. See 45 C.F.R. § 233.20(a)(3)(ii)(F). That was not done in the present cases, and the question is not before us. We note, however, that 45 C.F.R. § 233.20(a)(3)(ii)(F) has a "forgiveness clause" whereby the State may shorten the period of ineligibility when "the lump sum income or a portion thereof becomes unavailable to the family for a reason beyond the control of the family."
*543 In any event, it is incumbent upon AFDC recipients to petition the Surrogate so that a determination can be made as to whether funds are in fact "unavailable." The acceptance of AFDC benefits imposes certain obligations upon recipients, including compliance with State regulations intended to assist in making eligibility determinations. Fitzpatrick v. Illinois Department of Public Aid, 52 Ill.2d 218, 287 N.E.2d 666, 669 (1972); see also Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971) and Reed v. Slaughter, 110 N.J. 480, 482, 541 A.2d 1352 (1988).
As to whether these personal injury trust funds may be considered in determining a minor's current and future financial eligibility for the AFDC program, appellants urge that the Director should have been controlled by N.J.S.A. 44:10-4(a), as amended in 1985, which provides in relevant part as to repayments of past assistance:
Whenever any parent or relative with whom a child is living applies for or is receiving assistance for such child ... and it appears that there is pending entitlement to a payment to the child or to either or both his parents of funds arising from a claim or interest legally or equitably owned by such child or by either or both his parents, other than that portion of a personal injury award which a court specifically awards to a child to make him whole as a result of an injury, the county welfare agency may, as a condition of eligibility or continuation of eligibility for such assistance, require such parent or parents, or relative, to execute a written promise to repay, from the funds anticipated, the amount of assistance to be granted from the date of entitlement to such payment. Upon any refusal to make repayment, including refusal by any person acting for or on behalf of such parent or parents, or relative, in accordance with such promise, the county welfare agency may take all necessary and proper action under the laws of this State to enforce such promise, and the granting or continuing of assistance, as the case may be, shall be deemed due consideration therefor. (Emphasis supplied).
The statement to the amending bill reads:
The purpose of this bill is to see that personal injury awards to infants are properly distributed to the infant in situations where the recovery is to make the child whole. For example, if a child loses a leg, or the impairment of another part of his body, the child will be burdened throughout his life with such a problem and having more difficult times competing for the educational and occupational benefits which might get him off welfare. The child's injury *544 should not be considered a fortuitous event which generates a reimbursement to the government of money paid to welfare recipients.
Introductory Statement, Assembly No. 1612  L. 1985, c. 120.
The policy plainly expressed in this statute leaves no question that a local welfare department is precluded from using a child's trust funds to the extent generated "to make him whole as a result of an injury" in order to recoup past AFDC payments.
We agree that there is much, both in logic and equity, to commend a legislative and executive policy which also insulates a minor's personal injury trust funds[7] from current and future use for the minor's support, just as repayment of past AFDC support is now insulated. Indeed, we would prefer that such a policy choice had been made. However, neither N.J.S.A. 44:10-4(a) nor N.J.A.C. 10:81-3.39 presently permits this construction, and we are not at liberty to expand upon their plain language. The 1985 amendment to N.J.S.A. 44:10-4(a) appropriately modified earlier repayment policy. It left standing existing financial eligibility requirements such as contained in N.J.S.A. 44:10-1, 10-2, and 10-3.
Moreover, the Director's interpretation is consistent with federal law. The New Jersey Division of Economic Assistance validly points out that half of the AFDC funding comes from Federal sources, and that the Commissioner of Human Services is under a legislative mandate to do everything necessary to secure maximum Federal financial participation. N.J.S.A. 44:10-3. The United States Secretary of Health and Human Services may withhold federal funding if the HHS statutes and regulations are not followed by a state.[8] 42 U.S.C. §§ 601, 603, *545 604; 45 C.F.R. § 233.20(b); see State of N.J. v. Department of Health and Human Serv., 670 F.2d 1262 (3d Cir.1981).
It is clear that the Director's rulings have merely enforced the authorities under which the Division of Economic Assistance is empowered to act, as previously upheld by state and federal judicial interpretation.[9] Among the relevant federal cases, see Lukhard v. Reed, 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987) (broadly interpreting personal injury awards as income for AFDC eligibility purposes; emphasizing the requirement of state compliance with federal statutes and regulations; and holding that a "make-whole" personal injury award is not a replacement of a "resource" for AFDC purposes); Philadelphia Citizens in Action v. Schweiker, 669 F.2d 877 (3d Cir.1982) (emphasizing that AFDC is a program of last resort, requiring exhaustion of the recipient's assets); LaMadrid v. Hegstrom, 830 F.2d 1524 (9th Cir.1987) (state law cannot exempt personal injury awards from consideration as income for purpose of AFDC eligibility).
Our Supreme Court wrestled with the profound constitutional and human implications involved in county welfare board consideration of a minor's personal injury judgment for AFDC eligibility purposes in In re Estate of Jackson, 79 N.J. 517, 401 A.2d 517 (1979). Although its holding respecting repayment is now mooted by virtue of the 1985 amendments to N.J.S.A. 44:10-4(a), Jackson definitively establishes the limited role of *546 judicial review in this area, where the difficult social policy lines have been drawn by the legislative and executive branches of government. See also Francis, et al. v. Harris, et al., 100 N.J. Super. 313, 241 A.2d 844 (Law Div.) aff'd o.b., 103 N.J. Super. 440, 247 A.2d 492 (App.Div. 1968), certif. denied, 53 N.J. 227, 249 A.2d 601 (1969). Jackson and Francis point up the limited purpose and effect of the N.J.S.A. 44:10-4(a) amendments.
We recognize that there is a superficial appearance of violation of the non-repayment provisions of N.J.S.A. 44:10-4(a) caused by the Essex County Surrogate's administrative policy of permitting only one application for withdrawal per year. Without question, the ECDW's actions in these cases were taken only with respect to current and prospective monthly payments. It has agreed not to withhold those current and prospective payments to AFDC recipients pending completion of the annual application and withdrawal process. This is in the best interests of benefit recipients. It would be counterproductive to require that the Board withhold such current and prospective payments (as it can do) merely to avoid the technical appearance of a prohibited repayment. Accordingly, we approve this approach so long as it is limited only to annual recovery of AFDC funds which were paid out in reliance upon the type of arrangement herein sanctioned.
Finally, we observe that the Director's rulings are consistent with New Jersey trust laws, which permit the invasion of both corpus and income of a minor's trust for his necessary support and maintenance, see, e.g., N.J.S.A. 3B:12-43, and even for support and maintenance of needy members of his household. N.J.S.A. 3B:12-46. See also Matter of Conda, 104 N.J. 163, 516 A.2d 240 (1986).

CONCLUSION
The decisions of the Director are affirmed. Where a personal injury judgment is anticipated or secured on behalf of *547 a minor AFDC beneficiary, and held in trust by the Surrogate, ECDW may properly condition eligibility for current or future monthly AFDC payments for that child upon making application to the Surrogate for withdrawal from the trust fund of an amount equal to such payments. As the Surrogate does not disburse trust funds except upon petition to the Superior Court, see R. 4:48A(c), consideration of each such petition will require exploration of the extent to which funds were specifically earmarked for medical or rehabilitative expenses. See 45 C.F.R. 233.20(a)(3)(ii)(F). In the future, at least where there is any likelihood that a similar AFDC repayment issue will arise, judgments entered in infant's personal injury matters under R. 4:44-3 and R. 4:48A(a) should contain allocations consistent with this opinion.
If the prior tort judgment has made no allocation, the judge considering a disbursement petition may make such allocation, nunc pro tunc, supported by medical and other evidence.
NOTES
[1] See N.J.S.A. 3B:15-16, 17 and R. 4:48A.
[2] Although these matters have not been consolidated, they will be addressed in a single opinion due to their factual and legal similarities.
[3] O.J., H.S., S.O., L.C., M.S. and S.D.
[4] J.R. and M.B.
[5] No request for reimbursement of past AFDC awards was made.
[6] In the present cases, the Director approved the withholding of cash AFDC payments only to the extent earmarked for the trust-benefitted children.
[7] To the extent specifically awarded to make a child whole, e.g., to compensate for loss of sensory faculties, limbs, brain function, and similar permanent and non-replaceable losses, as well as for medical expenses, rehabilitation, funeral costs and the like.
[8] We note that the Secretary has not been made a party hereto. See Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 480, 476 A.2d 784 (1984).
[9] 45 C.F.R. § 233.20(a)(3)(ii)(F) provides:

When the AFDC unit's income ... exceeds the State need Standard for the Family because of the receipt of nonrecurring earned or unearned lump sum income (including for AFDC ... payments in the nature of a windfall, e.g., ... personal injury and worker compensation awards, to the extent it is not earmarked and used for the purpose for which it is paid, i.e., monies for back medical bills resulting from accidents or injury, funeral and burial costs, replacement or repair of resources, etc.), the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size.