**608 A.2d 907**

ESSEX COUNTY DIVISION OF WELFARE, PETITIONER–
RESPONDENT, v. O.J., RESPONDENT–APPELLANT.

ESSEX COUNTY DIVISION OF WELFARE, PETITIONER–
RESPONDENT, v. J.R., H.S., S.O., L.C., M.S., AND
S.D., RESPONDENTS–APPELLANTS.

ESSEX COUNTY DIVISION OF WELFARE, PETITIONER–
RESPONDENT, v. M.B., RESPONDENT–APPELLANT.

Argued November 18, 1991—Decided July 16, 1992.

*Richard W. Foard, III,* argued the cause for appellants (*Felipe Chavana,* Executive Director, Essex–Newark Legal Services, attorney).

*Dennis J. Conklin,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

STEIN, J.

In this case we address whether and to what extent a minor's personal-injury award deposited into a court-supervised trust account may be considered in determining eligibility of that child's family for Aid to Families with Dependent Children (AFDC). The issue arises by virtue of the appeals, argued together, of eight AFDC recipients, each of whom has at least one minor child who is the beneficiary of a trust fund established with the Essex County Surrogate following settlement of a personal injury case. The Essex County Division of Welfare (ECDW) had notified each of the petitioners that she was required, pursuant to *N.J.A.C.* 10:81–3.39, to seek release of monies from the trust accounts so that the funds could be considered in determining petitioners' continuing eligibility for AFDC benefits. Petitioners challenged the regulation administratively and then in the Appellate Division. The Appellate Division affirmed the rulings of the Director of the Division of Public Welfare, holding that *N.J.A.C.* 10:81–3.39 was consistent with federal regulations regarding the trust funds' availability and with *N.J.S.A.* 44:10–4(a), which governs repayment of benefits. *Essex County Div. of Welfare v. O.J.*, 246 *N.J.Super.* 537, 544–47, 588 *A.*2d 403 (1991). We granted the AFDC recipients' petition for certification, 126 *N.J.* 333, 598 *A.*2d 891 (1991), and now reverse.

I

The minor children of O.J., H.S., S.O., L.C., M.S., and S.D. received settlements for injuries sustained in motor-vehicle accidents, and the minor children of J.R. and M.B. received settlements for injuries resulting from lead poisoning. The settlement proceeds were deposited into court-supervised trust funds. Although the record does not specify the amounts deposited for most of the minors, the account in the *O.J.* case reflected a $2,976 deposit, and the account in the *M.B.* case reflected a $6,546 deposit.

In 1988 and 1989, ECDW informed petitioners by letter that they were required to petition the Chancery Division to release funds from the trust accounts. If released, ECDW would consider the funds as available when it calculated the families' AFDC benefits. The regulation relied on, *N.J.A.C.* 10:81–3.39, provides in part:

(a) Members of the [AFDC] eligible family shall take all necessary and reasonable action to avail themselves of funds for support from others who owe or may owe money to them or who are holding funds for them. * * *

1. Any failure or refusal by any person to take required action or to cooperate with the [Child Welfare Agency] in liquidation efforts renders the entire family ineligible for assistance for as long as the failure or refusal continues.

* * · * * * * * *

[3.i.] When a trust fund is not currently accessible and it exists at the time of application, the client must, as a condition of eligibility, make a bona fide presentation of a petition to the appropriate court for release of the funds for current and future support.

At oral argument, the Deputy Attorney General appearing on behalf of ECDW was uncertain about whether Essex County's policy necessarily reflected the approach of other counties, or whether it reflected a specific statewide policy requiring AFDC recipients to apply for release of court-held personal-injury awards for the benefit of minor children.

Each petitioner initially refused to cooperate with ECDW. In the *M.B.* case, ECDW terminated petitioner's minor son's benefits; in each of the other cases, ECDW terminated the benefits of the respective petitioners and their families. Each petitioner then requested an administrative hearing, and each, with the exception of H.S., agreed to cooperate with ECDW on the conditions that they not forfeit their rights to challenge the validity of the regulation, and that any money withdrawn from the trust funds would be restored if petitioners ultimately prevailed.

In the *M.B.* matter, the Director of the Division of Public Welfare (Director) reversed an Administrative Law Judge's finding and determined that the regulation was valid. In the

*O.J.* and *J.R.* cases, the Director adopted the finding of a second Administrative Law Judge, who had upheld the regulation's validity. As noted, the Appellate Division affirmed the Director's rulings, construing *N.J.S.A.* 44:10–4(a) as prohibiting the use of minors' personal-injury awards only for the purpose of repaying county welfare agencies for past AFDC assistance, but not precluding such awards from being considered in determining eligibility for current and future assistance. 246 *N.J.Super.* at 544, 588 *A.*2d 403. Although the Appellate Division observed that "there is much, both in logic and equity, to commend a legislative and executive policy which also insulates a minor's personal injury trust funds from current and future use for the minor's support, just as repayment of past AFDC support is now insulated," in its view the statute could not be so construed. *Ibid.*

## II

The federal AFDC program provides financial assistance to needy dependent children and their caretaker parents or relatives. *In re Rulemaking, N.J.A.C. 10:82–1.2 and N.J.A.C. 10:85–4.1*, 117 *N.J.* 311, 319, 566 *A.*2d 1154 (1989); *Franklin v. New Jersey Dep't of Human Servs.*, 111 *N.J.* 1, 8, 543 *A.*2d 1 (1988). One of AFDC's principal purposes is to assist such parents and relatives "to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *." 42 *U.S.C.* § 601. The AFDC program "is based on a scheme of cooperative federalism," *King v. Smith*, 392 *U.S.* 309, 316, 88 *S.Ct.* 2128, 2132–33, 20 *L.Ed.*2d 1118, 1125 (1968), in which state programs must be administered in accordance with federal statutes and regulations. *Lukhard v. Reed*, 481 *U.S.* 368, 371, 107 *S.Ct.* 1807, 1810, 95 *L.Ed.*2d 328, 333 (1987); *Heckler v. Turner*, 470 *U.S.* 184, 189, 105 *S.Ct.* 1138, 1141, 84 *L.Ed.*2d 138, 143 (1985); *In re Rulemaking, supra*, 117 *N.J.* at 319, 566 *A.*2d 1154. In New Jersey, the program's financing reflects contributions of approximately 50% federal, 45% state,

and 5% county funds. 42 *U.S.C.* § 603(a)(1); *N.J.S.A.* 44:10–5; *In re Rulemaking, supra,* 117 *N.J.* at 313, 566 *A.*2d 1154.

■ Federal law ordinarily controls the treatment of a family's assets in the calculation of AFDC eligibility. As a State choosing to participate in a federally-supported assistance program, New Jersey must comply with the terms of federal legislation and regulations. *Hausman v. Department of Insts. and Agencies,* 64 *N.J.* 202, 206–07, 314 *A.*2d 362, *cert. denied,* 417 *U.S.* 955, 94 *S.Ct.* 3083, 41 *L.Ed.*2d 674 (1974). Under federal law, a personal-injury award, if "available" to a recipient, is required to be treated as income for AFDC-eligibility purposes except for that portion of an award "earmarked and used for the purpose for which it is paid, *i.e.,* monies for back medical bills resulting from accidents or injury, funeral and burial costs, replacement or repair of resources, etc." 45 *C.F.R.* § 233.20(a)(3)(ii)(F).

■ The categorization of funds as either "income" or "resources" for eligibility purposes is particularly significant because of the so-called "lump-sum" rule, which applies only to "available" income. Under that rule, if a family receives income in a given month that exceeds its State's standard of need, the family is ineligible for AFDC for not only that month but for as many months as the money would last if the family spent each month an amount equal to the State standard of need. 42 *U.S.C.* 602(a)(17). The United States Supreme Court had ruled that States were empowered to treat personal-injury awards as income for AFDC-eligibility purposes. *Lukhard, supra,* 481 *U.S.* 368, 107 *S.Ct.* 1807, 95 *L.Ed.*2d 328. (The Department of Health and Human Services' regulation now mandating such treatment was adopted while *Lukhard* was pending.) In *Lukhard,* the Court upheld the validity of a Virginia regulation that treated personal-injury awards as income, thus bringing such awards within the scope of the lump-sum rule. In upholding the Virginia regulation, the Court rejected the contention that because personal-injury awards

"merely compensate for damage to healthy bodies," *id.* at 380, 107 *S.Ct.* at 1814, 95 *L.Ed.*2d at 339, those awards should be regarded as resources rather than income. Acknowledging that the portion of personal-injury awards attributable to pain and suffering, which replace no economic income, will reduce AFDC payments, the Court observed that the AFDC statute was not designed to "compensat[e] for the noneconomic inequities of life." *Id.* at 382, 107 *S.Ct.* at 1815–16, 95 *L.Ed.*2d at 341.

Recognizing that under federal law a personal-injury award, to the extent not "earmarked and used for the purpose for which it is paid," is treated as income for purposes of AFDC eligibility, we now consider whether federal legislation and regulations require us to treat minors' personal-injury settlements deposited in a court-supervised trust account as "available" for AFDC eligibility purposes. Under federal regulations, unless otherwise excluded,

> income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. [45 *C.F.R.* § 233.20(a)(3)(ii)(D) (1991).]

That regulation, often referred to as the "availability principle," serves "primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." *Heckler, supra,* 470 *U.S.* at 200, 105 *S.Ct.* at 1147, 84 *L.Ed.*2d at 150. Accordingly, the availability principle is to be given a "principled rather than rigid application" in determining whether funds are available for an AFDC recipient's support. *Deel v. Jackson,* 862 *F.*2d 1079, 1085 (4th Cir.1988), *cert. denied,* 490 *U.S.* 1092, 109 *S.Ct.* 2434, 104 *L.Ed.*2d 991 (1989); *accord* Elizabeth C. Kolshorn, Note, *The Effect of the Federal Availability Principle on State AFDC Asset–Transfer Rules,* 89 *Colum.L.Rev.* 580, 588, 591 (1989).

To determine whether the minors' settlements would be "available" under that standard, we first examine the nature of

the funds under consideration. Our Legislature has determined that funds representing a minor's tort settlement will be deposited either with the minor's parents or guardians, *N.J.S.A.* 3B:12–6 (when funds do not exceed $5,000), or in court, *N.J.S.A.* 3B:15–16 (when funds exceed $5,000). By Court Rule, we limit withdrawal of those funds; they may be released only if a petition for withdrawal is filed with and granted by the Chancery Division. *See R.* 4:48A(c). Thus, a court retains complete control over withdrawal of minors' trust funds containing the proceeds of personal-injury settlements. *See Strawbridge v. Strawbridge,* 35 *N.J.Super.* 125, 130–31, 113 *A.*2d 199 (Ch.Div. 1955).

In evaluating whether minors' personal-injury awards held in court-supervised trust funds are "available" for AFDC-eligibility purposes, we are bound by federal interpretations of the availability principle. We discern no federal policy, declared either through regulation or by judicial decree, controlling whether those funds must be considered "available" for AFDC-eligibility calculations. We note, however, the existing federal policies regarding the availability of monies in court-supervised funds with respect to eligibility for other federal-assistance programs. In those contexts, restricted trust funds completely under a court's control may not be considered for eligibility purposes. *See Miller v. Ibarra,* 746 *F.Supp.* 19, 26–27 (D.Colo.1990) (noting that Supplemental Security Income (SSI) regulations, which govern definition of resources for Medicaid eligibility, have been interpreted to exclude as resources trust funds that only court may invade); *Arkansas Dep't of Human Servs. v. Donis,* 280 *Ark.* 169, 655 *S.W.*2d 452, 453 (1983) (noting that 7 *C.F.R.* § 273(e)(8)(ii) renders court-administered trust funds inaccessible for food stamp eligibility purposes); *see also Cunningham v. Toan,* 762 *F.*2d 63 (8th Cir.1985) (holding that Old Age, Survivors and Disability Insurance benefits paid to "representative payee" on behalf of minor or disabled mother who does not live with beneficiary are not available for AFDC-eligibility purposes when not released by

representative payee). If the principles applied to other federal benefits programs were to apply to AFDC, the trust funds in question here would not be "available" because the supervising court alone controls whether they may be released.

As the United States Supreme Court has recognized, state governments are allowed "considerable latitude" in addressing the problems underlying welfare-assistance programs. *New York Dep't of Social Servs. v. Dublino*, 413 *U.S.* 405, 413–15, 93 *S.Ct.* 2507, 2512–14, 37 *L.Ed.*2d 688, 694–95 (1973); *accord Deel, supra*, 862 *F.*2d at 1083 (acknowledging States' flexibility in determining AFDC-eligibility requirements given that Congress cannot prescribe every detail of a program as complex as AFDC). Thus, courts reviewing state law and policies concerning benefits programs will "presume that state initiatives are valid in the absence of a clear statement of congressional disapproval." *Id.* at 1084; *accord Mitchell v. Swoap*, 35 *Cal.App.*3d 879, 113 *Cal.Rptr.* 75, 77 (1973) ("a state regulation [that] does not conflict with a specific provision of the Social Security Act is valid"). Absent a federal directive, a state's public policy, as expressed in its own laws, governs the treatment of a beneficiary's assets for eligibility purposes. *See Lang v. Pennsylvania Dep't of Pub. Welfare*, 515 *Pa.* 428, 528 *A.*2d 1335, 1337 (1987) (applying state public policy to determine availability of trust fund for medical-assistance-eligibility purposes when neither federal Medicaid statute nor associated regulations required consideration of trust funds). Accordingly, lacking an authoritative federal determination, we look to state law in resolving whether minors' personal-injury awards held in court-supervised trust funds are "available" for AFDC eligibility purposes.

Through legislation concerning "repayment agreements," pursuant to which public-benefits recipients repay the State for past assistance with the proceeds of a personal-injury award, the State has expressed its policy regarding the proper treatment of a child's personal-injury award. *N.J.S.A.* 44:10–

4(a) expressly exempts from repayment agreements "that portion of a personal injury award [that] a court specifically awards to a child to make him whole as a result of an injury." *N.J.S.A.* 44:10–4(a). The legislative purpose underlying that statute is

> to see that personal injury awards to infants are properly distributed to the infant in situations where the recovery is to make the child whole. For example, if a child loses a leg, or the impairment of another part of his body, the child will be burdened throughout his life with such a problem and [will] hav[e] [a] more difficult time[ ] competing for the educational and occupational benefits which might get him off welfare. *The child's injury should not be considered a fortuitous event which generates a reimbursement to the government of money paid to welfare recipients.* [Introductory Statement, Assembly, No. 1612–*L.*1985, *c.* 120 (emphasis added).]

That legislative policy comports with the notion expressed in our earlier case law that those portions of a child's personal-injury award intended for specific purposes, such as medical expenses, deserve protection. *See In re Estate of Jackson,* 79 *N.J.* 517, 527, 401 *A.*2d 517 (1979); *Cumberland County Welfare Bd. v. Rodriquez,* 144 *N.J.Super.* 365, 379, 365 *A.*2d 723 (Law Div.1976). As one court noted, "it makes * * * little sense to divest such an infant of monies recovered and set aside for future surgery, while thereafter expecting society to pay for that same surgery through Medicaid or similar funding." *Id.* at 382, 365 *A.*2d 723. Additionally, because tort awards for children are distinctly compensatory in character, they ordinarily should be protected against diversion absent a clear showing that they are intended to provide daily support. *See Cumberland County, supra,* 144 *N.J.Super.* at 379, 365 *A.*2d 723; *Baker v. Sterling,* 39 *N.Y.*2d 397, 384 *N.Y.S.*2d 128, 133, 348 *N.E.*2d 584 (1976) (recognizing that a minor's personal-injury award "simply compensates the infant for his loss").

■ In our view, the statute insulating minors' personal-injury awards applies with equal force to both repayment of AFDC benefits already conferred and to a family's eligibility for future benefits. As we have recognized, a child has the right to expect to receive the funds awarded for his or her injury on reaching the age of majority. *Essex County Welfare*

*Bd. v. Hellams,* 98 *N.J.Super.* 181, 186, 236 *A.*2d 416 (Essex County Ct.1967), *aff'd,* 103 *N.J.Super.* 438, 247 *A.*2d 491 (App. Div.1968). Our Rule requiring placement of personal-injury settlement monies into a court-supervised trust fund also highlights our preference for preserving those funds for the child's benefit. See *Rule* 4:48A(c).

The Appellate Division reluctantly determined that *N.J.S.A.* 44:10–4(a) applies only to repayment agreements. Although the statute's literal language refers only to repayment agreements, we find no principled basis on which to conclude that the Legislature intended to prohibit minors' personal-injury trust funds from being used to repay AFDC benefits while simultaneously allowing those very same funds to reduce eligibility for future benefits. *See State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966) (noting that statutory "interpretations which lead to absurd or unreasonable results are of course to be avoided"); *accord Galanter v. Planning Bd.,* 211 *N.J.Super.* 218, 221, 511 *A.*2d 702 (App.Div.1986). The Legislative purpose evinces no intent to distinguish the two applications; rather, it expresses an overriding concern "to see that personal injury awards * * * are properly distributed to the infant * * * where the recovery is to make the child whole." Introductory Statement, Assembly, No. 1612–*L.*1985, *c.* 120. That concern informs our approach to both repayment agreements and to future eligibility determinations. Surely, our societal capacity to assist needy families through AFDC benefits is not so meager as to mandate invasion of tort awards preserved in trust for injured children, to be used by them to overcome injury-related handicaps and avoid future dependence on public assistance.

Thus, the compensatory nature of minors' tort awards and the protection afforded such awards before a child reaches majority compel the conclusion that a child's personal-injury settlement intended to compensate for a child's loss is not "available" in the calculation of AFDC availability. Consequently, to the extent *N.J.A.C.* 10:81–3.39 requires an AFDC

recipient to seek release of minors' personal-injury awards deposited in court-supervised trust accounts, it conflicts with our statutory policies restricting release of such funds for support purposes. Because "any regulation or rule [that] contravenes a statute is of no force," *Terry v. Harris,* 175 *N.J.Super.* 482, 496, 420 *A.*2d 353 (Law Div.1980), we conclude that the regulation is invalid to that extent.

## III

█ Although not essential to our resolution of these appeals, we note that even if the federal government ultimately were to determine that minors' personal-injury settlements are "available" for AFDC-eligibility purposes, such funds could not be classified as "available" unless the monies had been released from the trust funds. Because the supervising court controls invasion of a minor's trust account, *R.* 4:48A(c), the funds could be classified as "available" only to the extent the supervising court grants a withdrawal petition.

Other states have similarly recognized the supervising court's discretion in this regard. *See, e.g., Langs v. Harder,* 165 *Conn.* 490, 338 *A.*2d 458, 463 (1973), *cert. denied,* 416 *U.S.* 994, 94 *S.Ct.* 2409, 40 *L.Ed.*2d 774 (1974); *Fitzpatrick v. Illinois Dep't of Pub. Aid,* 52 *Ill.*2d 218, 287 *N.E.*2d 666, 668 (1972); *LaBeaux v. Iowa Dep't of Human Servs.,* 465 *N.W.*2d 541, 544–46 (Iowa 1991); *Godden v. Department of Pub. Welfare,* 193 *Neb.* 269, 226 *N.W.*2d 627, 630 (1975); *In re McMullen,* 470 *N.W.*2d 196, 201–02 (N.D.1991); *Robinson v. South Carolina Dep't of Social Servs.,* 281 *S.C.* 158, 314 *S.E.*2d 349, 350 (S.C.Ct.App.1984); *cf. In re Welfare of M.B.P.,* 473 *N.W.*2d 389, 390–91 (Minn.Ct.App. (1991) (concluding that court holds discretion to determine whether monies in minor's personal-injury settlement fund are available for reimbursement of community-service expenses for mentally-ill child).

█ A court's power to adjudicate petitions for withdrawal derives from its broad authority to exercise all powers

over a minor's estate that the minor could exercise. *N.J.S.A.* 3B:12–49; *accord In re Trott,* 118 *N.J.Super.* 436, 440, 288 *A.*2d 303 (Ch.Div.1972). A court presented with a petition for withdrawal would then be guided by the statutory standards that inform a guardian's judgment with respect to assets under his or her control. *In re Conda,* 104 *N.J.* 163, 169–72, 516 *A.*2d 240 (1986); *Special Committee on Minors' Funds Report to the Supreme Court of New Jersey,* Oct. 7, 1988, at 19. Those broad standards, codified at *N.J.S.A.* 3B:12–43 to –49, reflect our Legislature's considered judgment as well as the principles established in earlier decisions concerning release of a minor's trust funds. *In re Conda, supra,* 104 *N.J.* at 170–71, 516 *A.*2d 240. Under the statutory scheme, a court determining whether to release funds could consider the size of the estate, the duration of the guardianship, and "the accustomed standard of living of the child and members of his household." *N.J.S.A.* 3B:12–45. A court could also consider the purpose of the award and could protect funds intended for medical expenses, *In re Conda, supra,* 104 *N.J.* at 171, 516 *A.*2d 240, or retain for the child the make-whole portion of a personal-injury award. *See N.J.S.A.* 44:10–4(a); *Cumberland County Welfare Bd., supra,* 144 *N.J.Super.* at 383, 365 *A.*2d 723.

We emphasize that the court's inquiry would necessarily be fact-specific. Under certain circumstances, a court might see fit to release funds for a child's support in the event the child had received a substantial settlement that had not been earmarked for items such as medical expenses. We would see little purpose, however, in encouraging invasion of tort awards containing minimal sums such as those at stake in the *O.J.* and *M.B.* cases. Orders releasing such funds would deprive the minor child of trust funds intended to compensate for personal injuries but would not enable a family to become permanently independent nor substantially reduce the ongoing governmental obligation to provide the family with financial support.

Absent a federal directive requiring states to treat minors' personal-injury trust funds as "available," however, we apply

our established state statutory law and policy regarding the proper treatment of a minor's personal-injury award held in a court-supervised trust account. We hold that as a matter of state law such funds are not "available" and therefore cannot be considered for the purpose of determining AFDC eligibility. Accordingly, we reverse the judgment of the Appellate Division.

*For reversal* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.